40 P.3d 110

Virginia L. DACHLET, the surviving mother of Jason Christopher Dachlet, Plaintiff–Appellant–Cross Respondent,

v.

STATE of Idaho, Defendant–Respondent–Cross Appellant.

No. 25273.

Supreme Court of Idaho, Boise, January 2001 Term.

Jan. 18, 2002.

Hicks Law Offices, Chtd., Mountain Home; Nelson, Snuffer and Dahle P.C., Sandy, UT, for appellant. Denver C. Snuffer, argued.

Hon. Alan G. Lance, Attorney General, Boise; Ringert, Clark, Chtd., Boise; Cantrill, Skinner, Sullivan & King, Boise, for respondents. Allyn L. Sweeney argued.

KIDWELL, Justice.

Virginia Dachlet (Dachlet), mother of the deceased Jason Dachlet (Jason), appeals the judgment entered against her and in favor of defendant, State of Idaho, pursuant to a jury verdict in a wrongful death action.

## I.

## FACTS AND PROCEDURAL BACKGROUND

This wrongful death case stems from the death of nineteen-year-old Jason Dachlet. Jason was killed on August 31/September 1, 1991, when the car he was driving plunged off an unused portion of Old State Highway 30 where an eight-foot-deep and sixty-foot-wide section of the road had been removed. Seventy-five percent of Jason's body was cremated as a result of a fire that broke out in his vehicle.

Due to the cremated condition of Jason's body, only two cc's of fluid could be retrieved to submit for testing of the blood alcohol level. The results of the test reflected that Jason had a .17 blood alcohol level. The admission of these results at trial are one subject of this appeal.

The district court granted summary judgment in favor of the defendants in this case— the State of Idaho (State), the Mountain Home Highway District (MHHD), and landowners Rodgers and Ramsey. This Court heard the appellant's appeal from the district court's grant of summary judgment dismissal in *Dachlet v. State,* 130 Idaho 204, 938 P.2d 1242 (1997).

This Court ultimately affirmed the district court's dismissal of defendants Rodgers and Ramsey, two private landowners who owned property contiguous to Old State Highway 30. This Court vacated the district court's judgment as to the State and MHHD and remanded the case to the district court. This Court found that genuine issues of material fact existed as to whether the State properly "abandoned" the portion of Old State Highway 30. Additionally, this Court found a genuine issue of material fact existed as to the adequacy of signage erected by the MHHD.

On October 14, 1998, Dachlet filed a motion in limine to exclude the blood alcohol interim report based on the following: 1) the defendant had not established a chain of custody to show the blood sample tested originated from Jason's remains; 2) the defendant did not produce documentation to demonstrate that the machine was calibrated,

a concurrent sample was performed, and the name of the person who ran the test and the signature of the person reporting the test; and 3) the blood alcohol results were inconsistent with eyewitness testimony of people who saw Jason before the accident. The district court ruled that the defendants would be allowed to establish that the sample was taken in a manner consistent with the drawing of blood standards established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The district court determined that once the proper foundation was laid, it would go to weight, not to admissibility.

Dachlet also filed a motion in limine in regards to the issue of "abandonment," arguing that the State should not be able to bring in evidence of its belief as to why the road had been abandoned. Dachlet argued that this Court had already determined that the State had not met the statutory requirements for abandonment, and therefore, the State was negligent as a matter of law. The district court allowed the State to present evidence regarding the fact that it did not maintain the road, along with any evidence of why it was not maintained.

A jury trial commenced on November 17, 1998, and ultimately a judgment was entered in favor of the defendant, State of Idaho. Dachlet filed this timely appeal.

## II.

## STANDARD OF REVIEW

"This Court reviews trial court decisions admitting or excluding evidence ... under the abuse of discretion standard." *Morris By and Through Morris v. Thomson,* 130 Idaho 138, 144, 937 P.2d 1212, 1218 (1997). The district court's decision to admit expert testimony is also reviewed under an abuse of discretion standard. *State v. Merwin,* 131 Idaho 642, 645, 962 P.2d 1026, 1029 (1998).

"In the case of an incorrect ruling regarding evidence, a new trial is merited only if the error affects a substantial right of one of the parties." *Morris By and Through Morris,* 130 Idaho at 144, 937 P.2d at 1218.

"When reviewing whether the district court exercised proper discretion, this Court determines: 1) whether the district court correctly perceived the issue as one of discretion; 2) whether the court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and 3) whether the district court reached its decision [based] upon an exercise of reason." *State v. Bowers,* 131 Idaho 639, 640, 962 P.2d 1023, 1024 (1998) (citing *State v. Howley,* 128 Idaho 874, 878, 920 P.2d 391, 395 (1996)).

## III.

## ANALYSIS

### A. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY ADMITTING THE BLOOD ALCOHOL RESULTS INTO EVIDENCE.

**Chain of Custody**

Idaho Rule of Evidence 901 controls the authentication of evidence. *State v. Gilpin,* 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App.1999). This rule states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." I.R.E. 901.

■ "Ordinarily, the party offering an exhibit establishes its chain of custody in order to create a presumption that it was not materially altered. If the chain of custody has been broken, however, the party can still rely upon other evidence to show a lack of material alteration." *State v. Crook,* 98 Idaho 383, 384, 565 P.2d 576, 577 (1977). The defendant carries the burden of establishing that the evidence was tampered or meddled with in order to overcome the presumption that the integrity of the evidence has not been disturbed. *State v. Kodesh,* 122 Idaho 756, 757, 838 P.2d 885, 886 (1992). "The standard for admissibility of evidence is whether the district court can determine, in all reasonable probability, the proffered ex-

hibit has not been changed in any material respect." *Id.* "Mere speculation that the evidence was mishandled or tampered with is insufficient to establish a break in the chain of custody." *Id.* at 758, 838 P.2d at 887. "Generally, in laying a proper foundation for the admission of test results of a blood sample the practicalities of proof do not require the prosecution to negate all possibilities of substitution or tampering." *Gilpin,* 132 Idaho at 647, 977 P.2d at 909.

■ In this case, Todd Goodsell, the mortician, testified that when the normal procedure for drawing blood is followed, once a sample is obtained, it is up to the coroner to submit it for testing. The coroner then typically submits the sample to one of the hospitals in Boise for testing. In this case, Goodsell could not recall specifically to whom he had turned the blood sample over, but he was sure it was either law enforcement or the coroner. Goodsell testified that he knew the blood sample had to have a "chain of possession," so he would only have given it to someone in authority.

Deputy Sheriff Ed Belk testified that he requested a blood sample be drawn because he thought it might be helpful in determining the cause of the accident. He was present when the sample was drawn, along with Goodsell and Deputy Spence.[1] After the sample was obtained, Belk testified that he and Spence brought the blood to the law enforcement building where it was placed in a locked box in a refrigerator. Belk then testified that the blood sample was eventually taken over to St. Alphonsus Regional Medical Center (SARMC) for an analysis. The blood sample had contained the name "Jason Dachlet" on it. Belk, who has since become the coroner, then testified that the habit, routine, and custom with respect to blood samples was for the coroner, or his designee, to take the sample to SARMC.

We find that the chain of custody was sufficiently established through the testimony of Todd Goodsell and Deputy Sheriff Ed Belk. Dachlet has not established that the

1. Deputy Spence is referred to throughout the transcript and briefs as both "Deputy Spence" and "Deputy Chaney," as Chaney is her maiden name. She got married in the time period between the accident and the trial.

evidence was tampered with in a manner that would alter the integrity of the evidence. Additionally, the evidence calling the integrity of the evidence into question goes to the weight of the evidence, as opposed to the admissibility.

**Reliability of Testing Procedures**

Whether an appropriate foundation for test results has been established is a preliminary question for the district court to decide. *State v. Uhlry*, 121 Idaho 1020, 1022, 829 P.2d 1369, 1371 (Ct.App.1992). Showing that the test was administered in conformity with applicable test procedures or expert testimony may suffice to establish an adequate foundation. *Id.* If expert testimony is utilized, Idaho Rule of Evidence 702 applies. It provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." I.R.E. 702.

Although not binding on this Court, the Court of Appeals has addressed the establishment of conformity with test procedures on several occasions. *See State v. Bell*, 115 Idaho 36, 764 P.2d 113 (Ct.App.1988) (finding that a test kit with the manufacturer's certificate, testimony from the nurse and the officer who oversaw the blood draw, and testimony from the state forensic officer who performed the test analysis established the requisite compliance with the testing procedures); *see State v. Phillips*, 117 Idaho 609, 790 P.2d 390 (Ct.App.1990) (holding that expert testimony presented at trial by the manager of the laboratory, a forensic pathologist, and by an emergency room physician were sufficient to establish reliability); *see State v. Charan*, 132 Idaho 341, 343, 971 P.2d 1165, 1167 (Ct.App.1999) (noting where compliance with approved procedures for test administration is not shown, it will be necessary for district courts to determine whether foundational standards have been met by alternative means based on the evidence presented in each case).

At trial, Robert Farris, a medical technologist employed as a chemist at SARMC, primarily as the supervisor of the chemistry department, toxicology department, and immunology department, testified. Farris was authorized to test blood samples in 1991, and testified as to the usual procedure in which blood was tested at the time. According to Farris:

> All coroner cases in 1991 were performed on an Abbott TDX, which allowed for a whole-blood analysis. The specimen would have been a whole-blood analysis.

> The information from the coroner form and the specimen itself would have been cross referenced and then put into Saint Al's computer, giving it a specimen number, and that specimen number would have reflected the time received and the time— the time and date received with the patient's—or with the individual's name.

> Then, when the result was obtained from the analysis, the analysis would have been performed in duplicate and with a control, a control having a specific blood alcohol concentration, and the result would then have been put into the computer....

Farris testified that SARMC was certified by the State of Idaho to perform blood alcohol testing in 1991, and that the machines are checked on a daily, weekly, monthly, and annual basis. Farris testified that documentation from tests performed in 1991 was no longer available. Farris also believed that a blood sample of two cc's is enough to be accurately tested.

The district court required "the defendants to establish that the sample was taken in a manner consistent with the drawing of blood standards established in *Dobber* [sic]. Once proper foundation is laid, it goes to weight, not the admissibility."

We find that the State established that the procedures utilized in performing the blood alcohol tests were done in accordance with methods approved by the Department of Law Enforcement. The expert testimony established a sufficient foundation and consequently, the district court did not err in finding that a sufficient foundation had been established.

### Reliability of the Blood Sample—Was it Whole Blood?

█ At trial, testimony was presented in support of Dachlet's position that the blood tested was not whole blood. For example, Dr. Keifer, the Elmore County Coroner at the time of the accident, testified that he first observed the remains of the body at the funeral home. He testified that approximately sixty pounds of remains were all that was left of Jason's body. In his view, the sample obtained was not whole blood because it had undergone chemical reactions due to the high degree of heat to which it was subjected. Keifer testified that he submitted the blood sample to SARMC for testing "because it is the law in this state that any type of an accident like that, there has to be a blood alcohol test run on it." Keifer testified that he "didn't think the sample was worth submitting because it would be irrelevant and it would not be accurate."

Dennis Crouch, an expert called by Dachlet, testified that he has a background in zoology and chemistry and has worked as a chemist and a toxicologist. Crouch concluded that there were no supporting documents for the testing, no documents for chain of custody, no documents for quality control, no documents that showed the calibration of the instruments, no documentation of the duplicate samples taken, and no documentation of who performed the analysis or who reported the result. Because there was no chain of custody, it was difficult to tell how the sample was handled, stored, and how it got through the testing process. Because alcohol is not stable in whole blood, the concentration can go up or down, depending on how the sample is handled, preserved, and stored. Crouch testified that if Jason's stomach ruptured from a traumatic injury and those liquids spilled into the body's cavity, the blood could have been contaminated, resulting in a higher blood alcohol concentration.

Crouch testified that he attempted to obtain the blood sample, since there are several tests that could easily be performed on the blood sample to determine if it is representative of whole blood. The fact that Lorang Beals opened the sample and smelled the blood may have contaminated the sample, as the blood was exposed to whatever microbes were in the air and the environment where the sample was opened. Crouch testified that opening the sample and smelling it was a subjective assessment of the sample that served no scientific purpose. Crouch testified that the fact that only two cc's of blood could be obtained from the heart lead him to the conclusion that there was some sort of problem. Crouch noted, "Either it's no longer in the heart, or it's coagulated so that only a portion of it is in there, a small portion."

Testimony was also presented on behalf of the State's argument that the blood sample was whole blood. For example, Todd Goodsell, the mortician at the time of the accident, testified that he was the person who obtained the blood sample from Jason's remains at the Summers Funeral Home. Goodsell explained that due to the condition of the body, he had to obtain blood directly from the heart. He was able to obtain a "small amount" of blood. Goodsell testified that the blood was very dark in color, was liquid, and was not unusual.

Lorang Beals, who holds a master's degree in toxicology, testified that he obtained the blood of the decedent from SARMC and smelled the blood. According to Beals, putrified blood "stinks" and has a "characteristic odor." He did not see any evidence of putrification. When asked how heat would affect the blood, Beals testified that the fact that the blood remained in a liquid form was very important and indicated that denaturation, coagulation from the heat, had not occurred. Additionally, the thick muscular walls of the heart most likely served to protect the heart and guard against contamination of the blood.

We note that trial counsel for Dachlet could have obtained and tested the blood had it pursued the appropriate legal channels. However, as this was not done, the issue of whether or not the blood sample was whole blood ultimately became a question of credibility, dependent on which expert witnesses the jury found to be the most believable. We find that the district court did not abuse its discretion when it admitted the results of the blood test.

## B. THE DISTRICT COURT DID NOT COMMIT REVERSIBLE ERROR BY ALLOWING THE JURY TO HEAR EVIDENCE FROM THE STATE OF IDAHO ABOUT WHY IT BELIEVED IT HAD ABANDONED THE ROAD.

█ "The rule is well established and long adhered to in this state that where, upon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the district court and upon subsequent appeal...." *In re Barker v. Fischbach & Moore, Inc.*, 110 Idaho 871, 872, 719 P.2d 1131, 1132 (1986) (citing *Suitts v. First Sec. Bank of Idaho*, 110 Idaho 15, 713 P.2d 1374 (1985)).

█ The elements of a common law negligence action include a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct, a breach of that duty, a causal connection between the defendant's conduct and resulting injuries, and actual loss or damage. *Brooks v. Logan*, 127 Idaho 484, 489, 903 P.2d 73, 78 (1995). When determining if a breach of duty occurred, the defendant's conduct must be measured against that of an ordinarily prudent person acting under all the circumstances and conditions then existing. *Id.* at 491, 903 P.2d at 80.

█ In this case, Dachlet argues that the "law of the case" in *Dachlet I*, established that the State had a statutory duty to maintain the road, provided that the road was not abandoned. According to the plaintiff, this Court then found that the statutory procedure for abandonment was not followed and the road was in fact, not abandoned. Therefore, Dachlet argues, the State breached a statutory duty and is negligent; any testimony to explain the State's reasons for believing the road was abandoned should not have been allowed.

An examination of this Court's holding in *Dachlet I*, indicates that it did not intend to preclude further evidence from being pre-

sented on this subject. Specifically, this Court noted, "The *record does not reflect* that the ITD followed the statutory procedure...." *Dachlet I*, 130 Idaho at 206, 938 P.2d at 1244 (emphasis added). Rather than establishing "the law of the case" as Dachlet argues, this Court was merely examining the evidence found in the record at that time. This Court examined the record, found that a genuine issue of material fact existed on this issue, and remanded the case to the district court. Consequently, Dachlet's argument that the "law of the case" established that statutory abandonment had not occurred is not supported by this Court's opinion in *Dachlet I*.

In order to establish a breach of duty under the regular negligence standard, it was necessary for the jury to determine if the State acted reasonably. Consequently, the district court did not err when it allowed the jury to hear evidence on why the State thought that it had abandoned the road.

## C. THERE WAS NO REVERSIBLE ERROR WHEN THE JURY WAS INFORMED BY THE STATE OF IDAHO OF A SETTLEMENT WITH MOUNTAIN HOME HIGHWAY DISTRICT BY DACHLET.

█ Dachlet claims that because evidence was introduced of the settlement between Dachlet and the MHHD, the jury heard prejudicial information that would lead them to believe that the MHHD was negligent. At trial, Dachlet objected to testimony concerning the offer of settlement after the witness had testified. The district court sustained Dachlet's objection, however Dachlet failed to make a motion to strike, a request for a limiting instruction, or a motion for a new trial.

Idaho Rule of Evidence 408 requires exclusion of evidence relating to compromises or offers to compromise, if the evidence being introduced is used to show liability or the invalidity of a claim. *Soria v. Sierra Pac. Airlines, Inc.*, 111 Idaho 594, 605, 726 P.2d 706, 717 (1986). In this case, there has been no violation of I.R.E. 408, because the district judge sustained Dachlet's objection to testimony regarding the offer of settlement.

Nevertheless, Dachlet argues that the testimony was heard by the jury and prejudiced its decision, thus mandating a new trial.

■ When determining whether a new trial should be granted because of the admission of prejudicial information, "the trial judge must determine whether the information reasonably could have produced prejudice, when evaluated in light of all the events and evidence at trial." *Roll v. City of Middleton*, 115 Idaho 833, 837, 771 P.2d 54, 58 (Ct.App.1989).

In this case, we find it unlikely that evidence of the settlement was prejudicial. During the course of the trial, the jury heard other testimony that would lead them to the conclusion that the MHHD was negligent. Among the testimony heard was that of Dachlet, who testified as to why the MHHD was a defendant in this case.

The jury instructions also served to cure the possibility of prejudice. Instruction No. 7 read in part, "If I sustain an objection to a question or to an exhibit, the witness may not answer the question or the exhibit may not be considered."

Finally, we note that a motion to strike should have been made by Dachlet in this case. We hold that the district court did not commit reversible error when testimony concerning the settlement agreement was heard by the jury.

## D. THE DISTRICT COURT DID NOT COMMIT REVERSIBLE ERROR BY NOT DIRECTING A VERDICT IN FAVOR OF DACHLET AND AGAINST DEFENDANT ON THE ISSUE OF APPORTIONMENT OF FAULT AGAINST MHHD.

### Standard of Review

■ "On a motion for a directed verdict pursuant to I.R.C.P. 50(a) ... the moving party admits the truth of the adverse evidence and every inference that may be legitimately drawn therefrom.... [The] motion should not be granted if there is substantial evidence to justify submitting the case to the jury or to support the verdict once it has been returned." *Smith v. Great Basin Grain Co.*, 98 Idaho 266, 274, 561 P.2d

1299 (1977) (quoting *Barlow v. Int'l Harvester Co.*, 95 Idaho 881, 886, 522 P.2d 1102, 1107 (1974)). " 'Substantial' evidence is not, however, synonymous with uncontradicted evidence. It is enough that the evidence is of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the party against whom the motion was made is proper." *Stephens v. Stearns*, 106 Idaho 249, 253, 678 P.2d 41, 45 (1984).

### Analysis

■ At the close of the defendant's evidence, Dachlet moved for a directed verdict. She argued, "We believe there is no basis in the record that would allow the jury to speculate upon the fault or failure of the Mountain Home Highway District to place adequate signs." The district court denied the motion, finding there was evidence to support a finding of fault on the part of the MHHD. The district court noted, "I think there is still a material issue of fact regarding that section of the roadway that Jason drove over that was within the control of the MHHD and whether or not they should have taken reasonable steps to barricade or place a type of barricade or road closed signage there."

Dachlet originally brought suit alleging that the MHHD was negligent in failing to properly maintain and erect signage in the area at issue. In this Court's opinion denying summary judgment for the MHHD, it noted that Dachlet "asserts that the signage erected by the MHHD ... is inadequate. Dachlet further urges that the "Dead End" sign erected is misleading...."

Substantial evidence of MHHD's negligence was presented at trial. Specifically, Greg Duval, a police officer who consults in the field of accident reconstruction, testified that had barricades been placed in the road, or had alterations been made to the road, such as the removal of asphalt in areas prior to the washout, the accident would not have occurred. James Pline, an engineer, testified that there was room to place a barricade between the MHHD right-of-way and the dead end sign. Fred Perez, an employee for

the MHHD, also testified that the MHHD had enough room within its right-of-way to place a barricade. He also testified that a "Road Closed" sign could have been erected within the MHHD's right of way. This testimony constituted substantial evidence to present this issue to the jury.

Because of the presence of evidence indicative of negligence on the part of the MHHD, we find that the district court did not err when it failed to direct a verdict in favor of the Dachlet.

## IV.

### CONCLUSION

The district court did not abuse its discretion in allowing the introduction of the results of the blood alcohol test into evidence. The district court did not err by allowing the State to present testimony as to why it believed it had "abandoned" the section of road at issue and when it refused to direct a verdict in favor of Dachlet. Additionally, a new trial is not warranted because of the fact that the jury heard testimony regarding the settlement reached between Dachlet and the MHHD. The district court's decision is affirmed. Costs to Respondent.

Chief Justice TROUT, Justices SCHROEDER, WALTERS, and EISMANN CONCUR.