## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 49893

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: April 9, 2024 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| RYAN KEITH HOWARD, SR., | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Benjamin J. Cluff, District Judge.

Judgment of conviction for domestic violence and battery, <u>affirmed</u>; judgment of conviction for three counts of witness intimidation, <u>vacated</u>.

Erik R. Lehtinen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Chief Judge

Ryan Keith Howard, Sr., appeals from his judgment of conviction for domestic violence, battery, and three counts of intimidating a witness, Idaho Code §§ 18-918(2)(a), 18-903, 18-2604. Howard argues the district court erred in allowing the State to amend the information because the amendment charged Howard with a different offense and the amended information prejudiced his defense. Howard also argues that his convictions must be vacated due to evidentiary errors at trial.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Howard was charged with domestic violence and battery in December 2020 after being involved in an altercation with his girlfriend, Marie King, and his girlfriend's adult daughter,

1

Tiffany King. Following Howard's arrest, Howard contacted Marie on multiple occasions resulting in Howard being charged with three counts of intimidating a witness, specifically, Marie.[1]

A week before trial, the State requested a continuance because Marie had been involved in a car accident. The State described Marie as the victim of the domestic violence charge and the intimidating a witness charge. Trial was rescheduled. Four days before the start of trial, the State filed a motion to file a second amended information to remove reference to Marie in the witness intimidation counts. The State described the amendment as a "scrivener's error," which should have identified Tiffany as the intimidation target.

Howard argued against the second amendment and disagreed with the State's position that it was to correct a scrivener's error and asserted he would be prejudiced in his defense by the amendment. The district court allowed the amendment. At the start of the jury trial, Howard objected on the record to the second amended information, arguing the second amended information denied him his constitutional right to due process. The district court ruled that, in its view, the original information "identifies not just Marie, but any witness or person believed to be called as a witness" and permitted the second amended information.

At trial, Marie testified that she felt threatened by other people in her family about testifying against Howard. During her testimony, the State sought to introduce a Facebook® post to show how Marie was being treated online by her family; specifically, how her mother and sister were sharing and commenting on a meme. Howard objected and the district court overruled the objection, stating that the probative value of the evidence outweighed its prejudicial effect.

Barbara Hunter, Marie's mother, testified for the defense. The State moved to admit the Facebook post to impeach the witness. Howard objected and the district court overruled the objection, ruling that the evidence was not being submitted for the truth of the matter but for impeachment purposes only. Before deliberations, the district court provided the jury with a limiting instruction regarding the Facebook post. Howard was convicted by a jury of one count of domestic violence, battery, and three counts of intimidating a witness. He timely appeals.

---

[1] The information was amended but did not change the language of the intimidation counts.

2

## II.

## STANDARD OF REVIEW

Whether an amendment to an indictment should be permitted is a matter within the sound discretion of the trial court. I.C.R. 7(e); *State v. Severson*, 147 Idaho 694, 708, 215 P.3d 414, 428 (2009). The trial court's decision to allow or disallow an amendment will be reviewed for an abuse of discretion. *Severson*, 147 Idaho at 708, 215 P.3d at 428. Permitting an amendment will only be regarded as an abuse of discretion when the amendment prejudices the substantial rights of the defendant. *Id.*

This Court reviews trial court decisions admitting or excluding evidence under an abuse of discretion standard. *Dachlet v. State*, 136 Idaho 752, 755, 40 P.3d 110, 113 (2002). A decision to admit or deny such evidence will not be disturbed on appeal absent a clear showing of abuse of that discretion. *State v. Smith*, 117 Idaho 225, 232, 786 P.2d 1127, 1134 (1990). We review questions of relevance de novo. *State v. Jones*, 167 Idaho 353, 358, 470 P.3d 1162, 1167 (2020); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

### A.    Amended Information

Howard argues the district court abused its discretion in granting the State's motion to file a second amended information. Specifically, Howard argues the second amended information charged him with a different offense and prejudiced his defense. The State argues the district court did not abuse its discretion because the amendment did not charge a new offense, and if it did, it did not prejudice Howard.

Article I, section 8, of the Idaho Constitution provides: "No person shall be held to answer for any felony . . . unless on presentment or indictment of a grand jury or information of the public prosecutor, after a commitment by a magistrate . . . ." Idaho Code § 19-1420 provides: An information or indictment cannot be amended so as to charge an offense other than that for which

3

the defendant has been held to answer. *State v. Flegel*, 151 Idaho 525, 526, 261 P.3d 519, 520 (2011).

Where a defendant claims that his or her right to due process was violated, we defer to the trial court's findings of fact, if supported by substantial evidence. *State v. Smith*, 135 Idaho 712, 720, 23 P.3d 786, 794 (Ct. App. 2001). However, we freely review the application of constitutional principles to those facts found. *Id.* Due process requires that an indictment be specific enough to ensure that the defendant has a meaningful opportunity to prepare his defense and to protect the defendant from subsequent prosecution for the same act. *Severson*, 147 Idaho at 709, 215 P.3d 429. Idaho Code § 19-1420 requires the same:

> An indictment or information may be amended by the prosecuting attorney without leave of the court, at any time before the defendant pleads, and at any time thereafter, in the discretion of the court, where it can be done without prejudice to the substantial rights of the defendant. An information or indictment cannot be amended so as to charge an offense other than that for which the defendant has been held to answer.

Idaho Criminal Rule 7(e) provides that the court may permit amendment of a complaint, an information or indictment at any time before the prosecution rests if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

In its original information, the State alleged:

> That the Defendant, RYAN KEITH HOWARD SR., on or about [date], did willfully influence Marie King, a witness and/or a person he believed may be called as a witness in a felony criminal proceeding, by verbally encouraging her not to testify and/or to change her testimony and/or falsify testimony, in violation of Idaho Code Section 18-2604.

In regard to the motion to amend, the prosecutor stated "I've . . . changed Marie King out for just a witness, but I'm hoping to put Tiffany King because that is the person we believe the defendant was trying to influence." The second amended information alleged:

> That the Defendant, RYAN KEITH HOWARD SR., on or about [date], did or did attempt to willfully influence in any manner Tiffany King, a witness, a potential witness, and/or a person the defendant believes to be a witness, from testifying freely, fully, and truthfully at a criminal proceeding, in violation of Idaho Code Section 18-2604.

Before addressing whether the second amended information alleged a new offense, the district court found that the language of the original information alleged intimidation of a witness not solely specific to Marie King. The district court read the witness intimidation counts, as originally charged, to apply not just to Marie, but to "any witness . . . [Howard] verbally

4

encouraged not to testify," and "identifies not just Marie, but any witness or person believed to be called as a witness." The State concedes that the original information alleged the target of Howard's attempts to influence was Marie King, not any other witness, and that the district court's reading to include "any witness" was error. We agree. The language of the original information plainly describes Marie King as the witness and/or person that may be called as a witness, without reference to any other potential witness.

The question then becomes whether the amendment charged a different offense. As noted, I.C. § 19-1420 prohibits an amendment "so as to charge an offense other than that for which the defendant has been held to answer." The district court allowed the amendment without directly addressing whether the amendment charged a different offense. The factual bases for the intimidating a witness charges are central to this determination.

There were four telephone calls between Howard and Marie. Those four calls form the basis of the intimidation charges. At the hearing on the motion to amend the information, the State argued that the change was merely to cure a scrivener's error, indicating that the State believed the recordings of the calls would show that Howard was speaking to Marie for her to put pressure on Tiffany. The State further argued that the amendment did not allege a different offense, as the offense remained intimidation of a witness, with just the identification of the target changed. Howard argued that, while he had been in possession of the recordings, he prepared his defense, pursuant to the original information, as if Howard attempted to intimidate Marie. He further argued that the amendment to allege a different target was a new offense. The district court asked whether the calls themselves formed the basis of the allegation that Howard was advising Marie to instruct Tiffany not to appear or otherwise influence her. Howard stated:

> I understand. The--the only reason I hesitate to give just a yes or no is in my listening to the phone calls he says "her," doesn't make it clear who "she" is, so it is possible or one interpretation that he was using "she" to refer to Marie, because during the entire telephone conversation he's referring to the person he's talking to as his sister, not as Marie King. And that's what--how I prepared my case, with the assumption that they were taking the position that he was talking to Marie King and talking in the third person in an effort to convolute things.
> But that, I believe, is their evidence. The allegation is that "tell her" was actually referring to Tiffany King, not Marie King, and this is the first time they've attempted to address it as Tiffany King and not Marie King.

Howard further argued that the conversations between Howard and Marie were very cordial, which was a part of his defense to the intimidation, and he did not prepare for or understand the

5

conversations to be referring to Tiffany, or any other person. The district court allowed the amendment, stating: "So that evidence [the phone call recordings] has been available to the defense. Either those conversations occurred or they did not. The defense I don't see would change if it was in the third person or the first person, he, she.[2]

The State argues that the change of the witness's name is not a new offense pursuant to I.C.R. 7(e). The State relies on *Severson*, where the Idaho Supreme Court found a new offense was not alleged when the State amended an indictment to add the manner in which the crime was committed. *Severson*, 147 Idaho at 709, 215 P.3d at 429. In *Severson*, the State originally charged Severson with first degree murder of his wife by poisoning. The State was later allowed to amend the charge to include suffocation as the means of causing death. *Id*. at 710, 215 P.3d at 421. The Supreme Court noted that an indictment must clearly indicate the facts giving rise to the offense or the means by which the defendant committed the alleged crime. *Id*. at 709, 215 P.3d at 429. In addition, an amendment that merely alleges additional means by which the defendant may have committed the crime is permissible if it does not prejudice the defendant. *Id*. The Court held that the amendment did not charge a new offense, as both indictments charged Severson with the murder of his wife, but the amendment merely alleged an alternative way Severson might have committed the offense. *Id*.

If the amendment had changed the means by which Howard attempted to intimidate Marie (for example, by letter, text or even through a third party) it would not charge a different offense. But here, the amendment changed the identity of the individual against whom Howard's conduct was intended.[3] While the crime of intimidation remained the same, the State could have charged Howard with witness intimidation of Marie and of Tiffany, which would constitute two separate offenses. If the defendant in *Severson* had been charged in the amended indictment with murdering a different person, such a change would allege a different offense. The same is true in this case. By amending the complaint to change the name of the target witness, the State charged a new offense.

---

[2]     In response to Howard's renewed objection at trial, the district court found the amendment added no new charge, but that finding was linked to the district court's erroneous reading of the scope of the original information.

[3]     Factually, the means of intimidation also changed, according to the view of the evidence by the State, because Howard tried to use Marie to intimidate Tiffany, instead of directly attempting to intimidate Marie.

As noted, I.C.R. 7(e) allows an amendment "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Howard argues that the amendment prejudiced his defense by requiring a defense to the intimidation charge that he had not prepared, with just two days left before trial, and that it subjected him to double jeopardy. The State argues that since there was no additional discovery needed, there was adequate time for Howard to prepare his defense to the second amended information. In *Severson*, the Idaho Supreme Court set forth factors that are relevant in determining whether a defendant is prejudiced by an amendment to the charging document, which include "whether the amendment alleging the additional facts took the defendant by surprise, impaired the defendant's ability to adequately prepare his defense, necessitated extensive further preparation by the defendant, or subjected him to double jeopardy." *Severson*, 147 Idaho at 709, 215 P.3d at 429. Permitting an amendment that prejudices the substantial rights of the defendant constitutes an abuse of discretion. *Id.*

The district court did not expressly state, at the time of its original ruling, that the second amendment did not prejudice Howard. However, the district court's comment that "the defense I don't see would change if it was in the third person or the first person, he, she" suggests that the district court believed the defense would not be prejudiced by the second amendment. After the objection was renewed at trial, the district court found that the evidence from the phone calls would be the same regardless of who was the target of intimidation, "Marie King, Tiffany King or anybody else."

During argument, Howard said that he had read the original information to be specific to Marie. Howard explained that, based upon his understanding that the target was Marie, his defense was that the conversations were cordial and not intimidating. He further explained the defense was that Howard was speaking in a third-person narrative for confusion purposes and was not actually trying to suggest to Marie that he was referring to Tiffany. Howard noted that the second amendment was filed on the eve of trial and the State had a year and a half to fix the "scrivener's error." He indicated that he waived the preliminary hearing based on the charge as he read it. The district court stated that Howard had the evidence for over a year, and it demonstrated the same conduct regardless of who was the target of Howard's alleged intimidation.

The fact that Howard had the evidence for over a year is of little importance. In every case, the State is required to timely provide to the defense evidence it believes supports a charge. I.C.R. 16(a). Here, the original information specifically identified Marie as the intimidation target.

7

The defense was allowed to rely on the charge in preparation of its defense. An information is required to provide sufficient facts to place a defendant on notice of the charges against him. *See* I.C.R. 7(b). Howard relied on the conversation between himself and Marie to defend against the witness intimidation of Marie as alleged in the original information.

The amendment prejudiced Howard's substantial rights in defending against the intimidation charges. First, the amended charges took Howard by surprise. The district court dismissed Howard's complaints regarding the second amendment, in part, because the court incorrectly read the original information to include any witness. Although the State argues that the universe of witnesses is small (only three possible targets of intimidation), that does not mean a name change does not surprise the defendant. Second, the amendment was allowed on the eve of trial. In *Severson*, the Idaho Supreme Court analyzed the timing and trial preparation, noting the amended indictment "was made nearly one whole year before trial and, therefore, gave Severson more than adequate time to prepare his defense relating to the allegation of murder by suffocation." *Severson*, 147 Idaho at 710, 215 P.3d at 430. Here, although Howard had the evidence for more than a year, he only had a short time before trial to change his defense. Finally, the district court also dismissed Howard's complaint that he would be prejudiced in his defense, stating that the underlying evidence of the phone calls was the same regardless of the target witness and that the obfuscation in using "he, she" did not change the nature of the calls.[4] The district court did not further analyze Howard's ability to change the focus of his defense in the short time available. Based upon these circumstances, the district court abused its discretion in allowing the second amendment. The judgment of conviction for three counts of witness intimidation is vacated.

## B. Admission of the Facebook Post

Howard argues the district court erred when it allowed a Facebook post to be admitted over his objection at trial. Howard contends that any probative value of the evidence is outweighed by its prejudicial effect. The State argues the district court did not abuse its discretion because the probative value of the evidence was not outweighed by any undue prejudice. We agree with the State.

---

[4]     Howard alludes to the amendment implicating double jeopardy. However, Howard makes no attempt to demonstrate how the amendment would implicate double jeopardy, and we need not analyze this claim further.

Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. I.R.E. 401. Relevant evidence is generally admissible. I.R.E. 402. While relevant evidence is generally admissible, I.R.E. 402, it may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice. I.R.E. 403. In other words, evidence should be excluded if it invites inordinate appeal to lines of reasoning outside of the evidence or emotions which are irrelevant to the decision-making process. *State v. Reyes*, 169 Idaho 781, 791, 503 P.3d 997, 1007 (2022). Rule 403 applies to evidence that is *unfairly* prejudicial because it tends to suggest that the jury should base its decision on an improper basis. *State v. Rawlings*, 159 Idaho 498, 506, 363 P.3d 339, 347 (2015); *see also State v. Diaz*, 170 Idaho 79, 91, 507 P.3d 1109, 1121 (2022).

At trial, the prosecutor introduced evidence that Tiffany and Marie felt threatened by other family members regarding testifying against Howard. Tiffany testified that her grandmother, Barbara, asked her not to testify. When the prosecutor asked Marie whether anyone other than Barbara had pressured her, she stated "There was a post on Facebook that my sister did . . . [that] kind of hurt me a little." Marie testified that her sister, Tammy, made the post and Barbara commented on it. The post was a reference to Grey's Anatomy, where a younger lady pushes a lady who is in a wheelchair over a cliff. Marie understood the lady in the wheelchair as a reference to her because she is in a wheelchair. The next day, Howard objected to admission of the post discussed during Marie's testimony. The prosecutor described the relevance of the post as a veiled threat against Marie not to testify. The district court indicated it did not see the relevance to the charges. Howard commented that his major concern was that someone might conclude that Howard had something to do with the threat, which he described as immensely prejudicial with little probative value. The district court indicated it would not admit the post as it was not relevant and any relevance was outweighed by its prejudice. Thereafter, the prosecutor stated he wanted to admit the post to show that Marie was not lying. Howard acknowledged that he had not objected to Marie's testimony regarding the post, but still objected on I.R.E. 403 grounds. The district court then stated that, upon further consideration, given the un-objected to testimony of Marie, the post would be admitted. The district court sua sponte indicated it would give a limiting instruction.

Howard contends that the post was not relevant, asserting: "Whether a person 'associated with the defendant' made 'a veiled threat' against Marie has nothing to do with the charges against

9

[him]." Howard also argues that there is no basis to admit extrinsic evidence to bolster the credibility of a witness where credibility had not been challenged. The State points out that the events which caused Marie to be in a wheelchair affected her recall. Admission of the post relating to her testimony not only went to establishing she was not lying but to her ability to remember events. In addition, Marie's credibility and truthfulness was attacked in defense of the domestic battery charge. The post was relevant to prove the basis of Marie's testimony and influences upon her.

Howard argues that any probative value of the post is outweighed by its prejudicial effect. At trial, Howard's I.R.E. 403 concern was that the jury would conclude that he had "something to do with this threat despite there not being any evidence" to support that conclusion.

Howard's concern that he may be linked to the post already existed, if at all, incident to Marie's un-objected to testimony about the post. The post itself contained no evidence of Howard's participation in the post or any comment about the post from Howard. Howard fails to demonstrate a significant prejudicial effect, let alone that the admission of the post was "unduly" prejudicial.

In addition, the district court instructed the jury that the post was "admitted for only the limited purpose of establishing the effect that such Facebook post and comments had on the witness, Marie King's, ability to recall the events at issue and testify freely," and that the jury must not "consider such evidence for any purpose except the limited purpose for which it was admitted." We presume that the jury followed the district court's instructions. *State v. Iverson*, 155 Idaho 766, 776, 316 P.3d 682, 692 (Ct. App. 2014). The district court did not abuse its discretion by admitting the Facebook post.

## C. Cross-Examination of Barbara Regarding the Facebook Post

Howard contends that the district court abused its discretion by permitting the prosecutor to cross-examine Barbara about her comment made on Facebook in response to the posted meme, because it was not relevant. Additionally, Howard argues that evidence of her comment to the post is impermissible character evidence. The State argues that the district court did not abuse its discretion by allowing the prosecutor to cross-examine Barbara regarding the Facebook post. We agree with the State.

Howard argued that the district court allowed the Facebook post to be admitted only for the limited purpose of demonstrating its impact on Marie and her ability to testify, and that cross-

10

examination questions beyond that purpose were not relevant. The prosecutor responded that the post was *additionally* relevant to demonstrate Barbara's bias, and that if the post had been excluded by the court, he would have still attempted to utilize it for this different purpose. The district court overruled Howard's objection, stating only, "[Barbara's] credibility is at issue; overruled."

The Facebook post was relevant to show Barbara's bias and to attack her credibility. Generally, proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness's testimony. *State v. Thumm*, 153 Idaho 533, 540, 285 P.3d 348, 355 (Ct. App. 2012). Howard called Barbara to testify that she did not believe Marie to be a truthful person. On cross-examination, after asking Barbara about her communications with Howard and how Barbara told Howard she would try to persuade Marie not to testify, the prosecutor handed Barbara the previously admitted post depicting a woman in a wheelchair (like Marie) being pushed toward a cliff, to which Barbara commented, "good one" with a laughing emoji. Barbara acknowledged that the Facebook post had "an uncanny resemblance to the situation in [Barbara's] family right now." The district court did not err in determining that the cross-examination of Barara about the post was relevant for the purpose of showing bias.

## IV.

## CONCLUSION

The district court erred in allowing the State to amend the information. The district court did not err in admitting the Facebook post or in allowing the prosecutor to cross-examine a witness about the post. Howard's judgment of conviction and sentence for domestic violence and battery is affirmed, but his judgment of conviction for three counts of witness intimidation is vacated.

Judge HUSKEY and Judge LORELLO **CONCUR**.