IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38281

| JAMES EARL NEWMAN, | ) | 2012 Unpublished Opinion No. 654 |
|---|---|---|
| | ) | |
| Petitioner-Appellant, | ) | Filed: October 1, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Juneal C. Kerrick, District Judge.

Judgment of dismissal of amended post-conviction petition, <u>affirmed</u>.

Nevin, Benjamine, McKay & Bartlett LLP; Deborah Whipple, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

James Earl Newman appeals from the district court's judgment of dismissal of his amended petition for post-conviction relief. Specifically, Newman asserts the district court erred in summarily dismissing the amended petition because Newman raised a genuine issue of fact as to his claims of ineffective assistance of counsel. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Evidence of the following facts was presented at Newman's criminal trial. Newman lived next door to a woman and her husband for a few months, but moved away around April 2003. On the morning of June 27, 2003, the woman left her home to take her husband to work, leaving three grandsons sleeping in the home. The woman returned about fifteen minutes later and was met inside the front door by an intruder, who had entered the home during her absence. The intruder immediately threw a bathrobe over the woman's head, struggled with her, and

1

instructed her to cooperate. With limited vision under the robe, the woman saw a revolver on the floor near her attacker's feet, which she recognized as her husband's, and knowing it was loaded, did as the attacker asked. Though she did not get a view of the attacker's face, the woman recognized the attacker as Newman by identifying his distinct voice, which she remembered from having met him when he was her neighbor.

Thereafter, Newman pulled the victim into the master bedroom. He secured the bathrobe around her head with its waist tie, bound her hands, threatened her, and fondled her breasts underneath her shirt, atop of her undergarments. Newman then led the victim into the bathroom located within the master bedroom, where he removed the victim's pants and underwear. Newman spoke of his daughter's cancer, unzipped his pants, and urinated in the bathroom sink. Though previously gloved, Newman proceeded to touch the victim's genitals with his bare hand. At that point, a grandson had awakened and was repeatedly knocking and kicking on the bedroom door. Newman opened the bedroom door and put clothing over the boy's head, secured with a bootlace. After bringing the grandson into the bathroom as well, Newman took the victim's truck keys, gathered firearms, jewelry, and other valuables from around the house, and put the items into the truck. Newman returned to the victim and her grandsons before leaving with the truck and warned them not to call the police because another person was in the home. He told them that if they did call the police, he would return and kill them. Along with the valuables Newman had collected, he took some rings from the victim's hands, some of her clothing, and the screen he had removed from the window to gain entry into the home.

Once Newman was gone, the victim called the police and said she suspected Newman had been the perpetrator based on voice recognition. She also noted the attacker was wearing brown, rough shoes, similar to ones Newman wore when she had met him a couple of months prior. One of the grandsons described the perpetrator as tall, white, with a mustache, and wearing a green shirt with blue pants and a black hat. Newman was apprehended later that day on an outstanding warrant and was wearing brown shoes, a green shirt, jeans, and a dark baseball cap. After arresting Newman, officers secured a search warrant and found items in Newman's home that matched those stolen from the victim. As further evidence of the perpetrator's identity, it was later determined that Newman's daughter had previously undergone a biopsy to determine whether she had cancer, which gave context to his comment in the bathroom at the victim's home. Though swabs from the bathroom sink did not detect the presence of urine, and

could not link Newman to the crime, other DNA evidence (saliva) found in a trash bag that was removed from the victim's bathroom and recovered in the stolen truck, matched Newman's DNA. Newman's hands were covered with a bag upon his arrest to determine whether additional DNA evidence, perhaps matching the victim, could be found underneath his fingernails. There are discrepancies in the record as to whether the fingernail scrapings were ever obtained. The State charged Newman with burglary, robbery, battery with the intent to commit a serious felony, two counts of grand theft, and two counts of kidnapping.

According to Newman's subsequent post-conviction petition, he eventually admitted to his defense counsel that he participated in the burglary and grand theft, but claimed another individual was also in the home and was responsible for the robbery, battery with the intent to commit a serious felony, and kidnapping. Newman's defense counsel, however, argued at trial that Newman was not present at all in the victim's home.

A jury found Newman guilty on six counts, acquitting him only on the second count of kidnapping. The district court entered a judgment of conviction and imposed sentences as follows: a unified term of ten years, with five years determinate, for burglary, Idaho Code § 18-1401; a unified life sentence, with twenty-five years determinate, for robbery, Idaho Code §§ 18-6501, 18-6502, 18-6503; a unified term of fifteen years, with ten years determinate, for battery with the intent to commit a serious felony, Idaho Code §§ 18-903(b), 18-911; unified terms of seven years, with three years determinate, for each count of grand theft (two counts), Idaho Code §§ 18-2403(1), 18-2407(1)(b); and a unified life sentence, with twenty-five years determinate, for first degree kidnapping, Idaho Code §§ 18-4501, 18-4503. The court ordered the sentences for burglary, robbery, and grand theft (both counts) to run concurrent with each other and consecutive to a sentence from an unrelated case, and the sentences for battery with the intent to commit a serious felony and kidnapping to run concurrent with each other, but consecutive to all other sentences. The resulting aggregate sentence is for a unified life sentence, with fifty years determinate. Newman appealed, arguing his sentences were excessive. This Court affirmed the sentences in an unpublished decision. *State v. Newman*, Docket No. 30796 (Ct. App. June 17, 2005). The Idaho Supreme Court initially granted review, but subsequently ordered that this Court's opinion was final. *State v. Newman*, Docket No. 32275.

In August 2005, Newman filed a petition for post-conviction relief. Upon initial review, the district court issued a notice of intent to dismiss. In response, Newman filed an amended

3

petition, asserting his defense counsel provided ineffective assistance in six ways: (1) failure to request and review all discovery material prior to trial, including a failure to subpoena key pieces of DNA evidence; (2) failure to provide Newman with discovery material prior to and during trial; (3) failure to communicate with Newman before trial; (4) failure to challenge the admissibility of the DNA evidence found in the trash bag despite obvious chain-of-custody issues; (5) failure to follow Newman's directions in attempting to reach a plea agreement; and (6) failure to more aggressively pursue disqualification of the district court judge because of judicial bias. Finally, Newman asserted that his appellate counsel was ineffective for failing to communicate with Newman during the appeal process.

The State answered with a motion to strike the first amended petition on the basis it was not properly filed[1] and a motion for summary dismissal. Through substituted counsel, Newman filed a reply to the court's notice of intent to dismiss and the State's motion for summary dismissal. Therein, Newman expanded on the claims of ineffective assistance of counsel, primarily relating to discovery material and other DNA evidence, and argued that testing of the urine swabs and fingernail scrapings would have provided reasonable doubt as to his guilt of the crimes of robbery, battery with the intent to commit a serious felony, and kidnapping. In a supporting affidavit, he stated his fingernails were scraped upon his arrest and he had asked defense counsel to pursue independent DNA testing of both the scrapings and urine swabs, but defense counsel failed to do so. He also made a motion for discovery to allow testing of those DNA samples. The State, in its response, asserted Newman could not show prejudice because he admitted involvement in the crimes. Newman again replied, asserting defense counsel was ineffective for pursuing a defense of innocence on all charges rather than innocence only on the robbery, battery with the intent to commit a serious felony, and kidnapping charges, arguably supported by the urine and fingernail evidence. Newman argued that his defense counsel's insistence on asserting a defense that Newman was not present at all was patently absurd and prejudicial in light of DNA evidence that placed Newman at the scene, along with Newman's possession of the stolen goods. After oral argument from both parties, the court took the motion for summary dismissal under advisement and issued an order allowing some discovery.

---

[1] The State later withdrew this motion.

The discovery revealed that the State was not in custody of any fingernail scrapings from Newman and that the urine swab tests were inconclusive as to the presence of urine. The district court issued an order dismissing the amended petition for post-conviction relief, because: (1) trial testimony established no urine was detected on the swabs and Newman failed to produce admissible expert testimony as to how further testing, in the absence of detectable urine, could be used to exculpate Newman; (2) though Newman disclosed the name of the alleged second perpetrator in the crimes during the presentence investigation, Newman failed to provide an affidavit to support his petition concerning what evidence of the second perpetrator could have been presented at trial to change the outcome; (3) Newman failed to show how DNA evidence from the fingernail scrapings, even if it showed an absence of the victim's DNA, would have changed the outcome in light of the compelling evidence at trial that Newman was the sole perpetrator;[2] (4) the allegations regarding a failure to provide discovery were conclusory and unsupported by evidence; (5) Newman failed to allege what the chain of custody was or was not in relation to the saliva DNA evidence found in the trash bag and did not allege or show how a challenge to the evidence would have been successful; (6) there is no constitutional right to a plea bargain, and thus, Newman could not establish prejudice for any alleged failures of defense counsel to effectively negotiate a deal for Newman; (7) no prejudice could be established with respect to a failure to pursue a disqualification of the trial judge before sentencing because Newman's sentences were affirmed on appeal; and (8) allegations regarding appellate counsel's failure to communicate with Newman were conclusory and incomplete. The district court entered a judgment of dismissal on October 27, 2010. Newman timely appeals.

## II.

## STANDARD OF REVIEW

A petition for post-conviction relief initiates a civil, rather than criminal, proceeding, governed by the Idaho Rules of Civil Procedure. *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008). *See also Pizzuto v. State*, 146 Idaho 720, 724, 202 P.3d 642, 646 (2008). Like plaintiffs in other civil actions, the petitioner must prove by a preponderance of evidence the

---

[2] Among other evidence, the victim testified that she was sure only one perpetrator was in the home. She testified the intruder talked to her throughout the ordeal, she never heard another person moving around the house or any other voices, and she heard only one car door slam when Newman left in her husband's truck.

allegations upon which the request for post-conviction relief is based. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action, however, in that it must contain more than "a short and plain statement of the claim" that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). *State v. Payne*, 146 Idaho 548, 560, 199 P.3d 123, 135 (2008); *Goodwin*, 138 Idaho at 271, 61 P.3d at 628. The petition must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records or other evidence supporting its allegations must be attached, or the petition must state why such supporting evidence is not included. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations or it will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a party's motion or upon the court's own initiative, if "it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of facts, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." I.C. § 19-4906(c). When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Payne*, 146 Idaho at 561, 199 P.3d at 136. Moreover, because the district court rather than a jury will be the trier of fact in the event of an evidentiary hearing, the district court is not constrained to draw inferences in the petitioner's favor, but is free to arrive at the most probable inferences to be drawn from the evidence. *Yakovac*, 145 Idaho at 444, 180 P.3d at 483; *Wolf*, 152 Idaho at 67, 266 P.3d at 1172; *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Chavez v. Barrus*, 146 Idaho 212, 218, 192 P.3d 1036, 1042 (2008); *Hayes*, 146 Idaho at 355, 195 P.2d at 714.

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do

not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *McKay v. State*, 148 Idaho 567, 570, 225 P.3d 700, 703 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009); *Charboneau v. State*, 144 Idaho 900, 903, 174 P.3d 870, 873 (2007); *Berg v. State*, 131 Idaho 517, 518, 960 P.2d 738, 739 (1998); *Murphy v. State*, 143 Idaho 139, 145, 139 P.3d 741, 747 (Ct. App. 2006); *Cootz v. State*, 129 Idaho 360, 368, 924 P.2d 622, 630 (Ct. App. 1996). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Payne*, 146 Idaho at 561, 199 P.3d at 136.

Conversely, if the petition, affidavits and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Stuart v. State*, 118 Idaho 932, 934, 801 P.2d 1283, 1285 (1990); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Kelly*, 149 Idaho at 521, 236 P.3d at 1281; *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001); *Martinez v. State*, 130 Idaho 530, 532, 944 P.2d 127, 129 (Ct. App. 1997).

All of Newman's claims relate to ineffective assistance of counsel. A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Barcella*, 148 Idaho at 477, 224 P.3d at 544. To

7

establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the proceeding would have been different. *Id.* This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Id.* To survive a motion for summary disposition, a post-conviction petitioner must establish a genuine issue of fact as to both deficiency and prejudice. *Pratt v. State*, 134 Idaho 581, 583, 6 P.3d 831, 833 (2000).

## III.

## DISCUSSION

### A.  Issues Preserved for Appellate Review

In his primary argument on appeal, Newman asserts that the district court erred in parsing out the individual claims of ineffective assistance and by finding that Newman failed to establish prejudice as to each individual claim. He argues the district court should have looked to the cumulative effect of counsel's deficiencies and that, with such an approach, summary dismissal was error because he presented a genuine issue of fact as to whether his counsel's ineffective assistance caused Newman prejudice. At the root of this assertion is Newman's claim that each of defense counsel's errors cumulatively led to an overarching presentation of an absurd defense and that, but for the absurd defense of innocence as to all charges, there was a reasonable probability of a different outcome. Had defense counsel presented a case that Newman was involved in the burglary and grand theft, but presented and pursued DNA evidence and other discovery, Newman contends he may have been acquitted on the charges of robbery, battery with the intent to commit a serious felony, and kidnapping. In support of his assignment of error by the district court, Newman cites to *Sanders v. Ryder*, 342 F.3d 991 (9th Cir. 2003), wherein the Ninth Circuit Court of Appeals stated:

> Separate errors by counsel at trial and at sentencing should be analyzed together to see whether their cumulative effect deprived the defendant of his right to effective assistance. They are, in other words, not separate claims, but rather different aspects of a single claim of ineffective assistance of trial counsel.

8

*Id.* at 1001 (citations omitted). Thus, Newman maintains that the district court erred in reviewing his claims individually and that we may cumulate the effect of the many alleged deficiencies by his defense counsel in order to find defense counsel presented an absurd defense, with resulting prejudice sufficient to meet the second prong of *Strickland*, regardless of whether "cumulative effect" or "cumulative error" was specifically pled or tried before the district court. The State responds that Newman did not allege in any of his post-conviction claims that the accumulation of his defense counsel's errors resulted in ineffective assistance for presenting an absurd defense and, therefore, it should not be addressed on appeal.

We agree with the State. Newman did not mention an "absurd defense" until his second reply to the State's motion for summary dismissal and did not argue cumulative prejudice. The district court neither addressed nor ruled on the issue. Thus, it is not preserved for appeal. *Milton .v State*, 126 Idaho 638, 644, 888 P.2d 812, 818 (Ct. App. 1995).

Furthermore, we need not consider cumulating prejudice based on the claims for which Newman did prove deficient performance. In dismissing Newman's amended petition the district court stated, "Newman has raised sufficient issues of fact relating to the first prong of the *Strickland* standard, the alleged deficient performance of trial counsel relating to at least certain of his claims." It is on this language Newman relies in arguing prejudice is the only issue we need to address on review. However, in looking at Newman's evidence, we can determine that he failed to demonstrate counsel's deficiency as to all but a single claim, and on that one claim, he failed to establish a genuine issue of fact as to prejudice. We, therefore, do not reach the issue of whether we should apply *Strickland's* ineffective assistance of counsel standard by cumulating the effect of counsel's deficiencies in order to find prejudice sufficient to meet the second prong of that standard. We address each claim individually below.

**B.      Review of Newman's Individual Claims**

**1.      Failure to request and review discovery material and subpoena key evidence**

In regards to discovery and subpoenas for evidence, Newman asserts that defense counsel failed to obtain, prior to trial, test results from the fingernail scrapings and urine swabs and that the failure was both deficient and prejudicial. Additionally, Newman contends that had defense counsel pursued independent testing of the urine samples and fingernail scrapings, the jury would have found him not guilty of the crimes related to robbery, battery with the intent to commit a serious felony, and kidnapping because Newman assumes the urine would not have

9

matched his DNA and the scrapings would have revealed that the victim's DNA was not present. These assertions coincide with Newman's claim that another person was with Newman and committed those crimes and that defense counsel was not only deficient, but prejudiced Newman by failing to subpoena this alleged second perpetrator as a witness.

Defense counsel is generally bound to conduct a prompt and thorough pretrial investigation of his or her case. *Davis v. State*, 116 Idaho 401, 407, 775 P.2d 1243, 1249 (Ct. App. 1998). Strategic choices made after only partial investigation are reasonable only to the extent that reasonable professional judgment supports the limitations on investigation. *Strickland*, 466 U.S. at 690-91. Construing the facts in the petitioner's favor, Newman's assertions that defense counsel failed to request discovery and did not obtain or review test results from the urine swabs or purported fingernail scrapings prior to trial, raise a genuine issue of fact as to deficient performance.

Nonetheless, there is no evidence showing that, absent the deficiency, there was a reasonable probability of a different outcome at Newman's trial. Through trial testimony, it was discerned that, although Newman's hands were bagged upon his arrest, no law enforcement officer involved in the investigation of the case could affirmatively say that fingernail scrapings were obtained. As to the urine swabs, a witness from the State forensic lab testified that she tested both of the swabs from the sink and could not detect the presence of urine. She further testified that such a result meant either no urine was present or the amount present was too small for testing. These results, brought out at trial, were confirmed in the limited discovery allowed on Newman's post-conviction petition: the State was not in custody of any fingernail scrapings from Newman and the testing of the swabs detected no urine and, thus, were inconclusive. Such information would not have been either particularly helpful or harmful to the defense, and Newman fails to allege how obtaining these results earlier would have changed defense counsel's trial strategy or affected the outcome of trial. We conclude Newman fails to raise a genuine issue of fact as to prejudice.

As to defense counsel's purported failure to independently test the evidence, Newman also fails to show how pursuing independent testing would have supported the theory of defense Newman asserts counsel should have presented. The district court found Newman did not present admissible evidence, from an expert or otherwise, as to how further testing of the samples would, in the absence of detectable urine, be used to exculpate Newman of the robbery,

10

battery with the intent to commit a serious felony, or kidnapping charges. In fact, defense counsel acknowledged in closing arguments that the swab samples detecting no urine should have raised reasonable doubt as to Newman's guilt, but that counsel knew of no other testing that could have been done on the swabs. We conclude the district court did not err in holding Newman failed to raise a genuine issue of fact from the failure of defense counsel to review or independently test the swabs. *See Self v. State*, 145 Idaho 578, 181 P.3d 504 (Ct. App. 2007) (concluding the petitioner did not raise a genuine issue of material fact because he did not show the DNA evidence or results provided at trial were flawed and provided no expert affidavit showing the substance of what testimony to the contrary would have been); *Raudebaugh v. State*, 135 Idaho 602, 605, 21 P.3d 924, 927 (Ct. App. 2001) (concluding summary dismissal was appropriate because the petitioner did not make a sufficient showing that the failure of defense counsel to hire an independent DNA expert actually prejudiced his case).[3] Without demonstrating that the results by the State forensic lab were somehow inadequate, flawed or incomplete, Newman cannot establish any deficiency by defense counsel.

As to defense counsel's failure to subpoena the alleged other perpetrator, Newman did not show that defense counsel was deficient. "[I]t is well established that failure of counsel to locate and subpoena witnesses is not, in and of itself, grounds for post-conviction relief based upon alleged ineffective assistance of counsel." *Drapeau v. State*, 103 Idaho 612, 616, 651 P.2d 546, 550 (Ct. App. 1982). The selection of witnesses is part of trial strategy and will not be second-guessed without evidence of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation. *Id*. Further, on a petition for post-conviction relief, it is not enough to say that defense counsel should have pursued calling

---

[3] The present case is also clearly distinguishable from *Wiggins v. Smith*, 539 U.S. 510 (2003), on which Newman relies to support his claims that the limited investigation and discovery, or the "absurd defense," prejudiced him. In *Wiggins*, the defendant was convicted of first degree murder, robbery and two counts of theft, and the State pursued the death penalty. Defense counsel presented no mitigating evidence and prepared no social history for the sentencing trial. *Id*. at 514-16. The question before the Supreme Court was whether the investigation supporting counsel's decision not to introduce mitigating evidence of Wiggins' background was reasonable, and the Supreme Court concluded it was not in light of the facts known to counsel about Wiggins' childhood. *Id*. at 523, 527-28. In *Wiggins*, counsel was deficient and prejudiced the defendant by overlooking clearly established evidence of social history, but here, there is no allegation of what evidence would be established had defense counsel conducted more thorough discovery or pursued independent testing of the DNA samples.

another witness without also alleging, with more than mere speculation, the substance of what the testimony would entail such that it would be reasonably probable the outcome of trial would have been different. *Rossignol v. State*, 152 Idaho 700, 710, 274 P.3d 1, 11 (Ct. App. 2012). Speculative evidence that another person committed the crime is inadequate unless such evidence of an alternate perpetrator shows some proof of that person's connection with the crime, such as providing facts or circumstances that would tend clearly to point out someone besides the accused as the guilty party. *See State v. Kerchusky*, 138 Idaho 671, 675-76, 67 P.3d 1283, 1287-88 (Ct. App. 2003).

When considering the compelling evidence that the crimes were committed by a sole perpetrator, it was not unsound trial strategy to decide against presenting a second perpetrator theory despite Newman's wishes to the contrary. The victim testified that the perpetrator talked to her throughout the ordeal, she never heard another intruder moving around, and she heard only one person leave in the truck. Also of significance, she testified that she heard the garbage truck stop at her house during the attack and this made her attacker extremely nervous and paranoid, she heard her dogs barking on and off, and she heard her grandson kicking and knocking at the bedroom door; yet, she heard no other intruder. Two of the grandsons, called as witnesses, both testified in a manner supporting that there was only one intruder. Defense counsel acknowledged that Newman possessed goods stolen from the victim and, in light of the substantial evidence of only one perpetrator, simply argued in closing argument that the timeline of events made it doubtful Newman could have been the perpetrator of the crimes in the victim's home and tried to raise doubt as to the victim's recognition of Newman based on his voice. Defense counsel attempted to explain that Newman's possession of the stolen goods meant one of the people Newman had seen on the day of the crime could have committed the acts charged.

In asserting that defense counsel should have pursued the second perpetrator theory, rather than just alluding to one, Newman did not provide an affidavit alleging what the purported second perpetrator's testimony would contain, how it would have altered the outcome at trial, or how the second perpetrator could have been compelled to testify rather than invoking his right against self-incrimination. With only conclusory remarks about this alleged witness, Newman cannot show defense counsel was deficient, and the district court did not err when it found no genuine issue of material fact as to deficiency on this claim.

12

## 2.     Failure to provide discovery materials or communicate prior to trial

Next, in his second and third claims, Newman asserts his defense counsel was ineffective by failing to provide discovery materials or communicate with Newman prior to trial. Although we have recognized claims of ineffective assistance of counsel for counsel's failure to communicate, *Thomas v. State*, 145 Idaho 765, 768, 185 P.3d 921, 924 (Ct. App. 2008), summary disposition is appropriate where there is no indication in the record as to how further consultation might have affected the results at trial. *Parrott v. State*, 117 Idaho 272, 275, 787 P.2d 258, 261 (1990).

Here, Newman simply argued that had he been given copies of discovery and an opportunity to further communicate with his defense counsel, he could have assisted in developing a timeline of events, which would have shown Newman could not have entered the house, committed the alleged crimes, and removed and discarded the stolen items in the places they were found prior to his arrest in the afternoon of the day of the crime. Not only are these statements conclusory and incomplete, as the district court found, but the record shows this asserted timeline defense was precisely what defense counsel argued in his closing argument. Defense counsel broke down the State's evidence of Newman's whereabouts on the morning of the crimes and argued the evidence showing Newman was at various places at certain times did not support finding Newman committed the crimes at the victim's home. Consequently, Newman has failed to show what further consultation was necessary or how it would have affected the presentation of counsel's defense and did not raise a genuine issue of fact as to any deficiency by defense counsel.

## 3.     Failure to challenge the admissibility of DNA evidence

Newman argues defense counsel provided ineffective assistance by failing to challenge the admissibility of the saliva DNA evidence connecting Newman to the crimes charged. This evidence was gathered from a trash bag that had been recovered from the victim's stolen truck after the truck was returned to the victim and her husband. Newman asserts the sequence of events leading to the discovery of the saliva presented obvious problems in the chain of custody and defense counsel should have made a motion to have the DNA evidence excluded from trial.

Once the party offering evidence establishes the chain of custody and creates the presumption that it was not materially altered during the chain of custody, the burden then shifts to the defendant to overcome the presumption. *State v. Gilpin*, 132 Idaho 643, 647, 977 P.2d

13

905, 909 (Ct. App. 1999). The defendant must make some showing that the evidence was tampered or meddled with. *Id*. "Mere speculation that the evidence was mishandled or tampered with is insufficient to establish a break in the chain of custody." *State v. Kodesh*, 122 Idaho 756, 758, 838 P.2d 885, 887 (Ct. App. 1992); *see also Dachlet v. State*, 136 Idaho 752, 756, 40 P.3d 110, 114 (2002) (quoting *Kodesh*). In a post-conviction proceeding challenging an attorney's failure to pursue a motion in the underlying criminal action, the district court may consider the probability of success of the motion in question in determining whether the attorney's inactivity constituted incompetent performance. *Boman v. State,* 129 Idaho 520, 526, 927 P.2d 910, 916 (Ct. App. 1996).

Trial testimony established that the trash bag was found in the victim's truck that was stolen. The trash bag contained chewing tobacco spit, and testimony at trial established that Newman chewed tobacco, whereas neither the victim nor her husband used chewing tobacco. After the truck had been inventoried and returned to the victim and her husband, they discovered the trash bag in the pickup bed and testified that the bag had not been placed there by either of them.[4] Both the victim and her husband also testified that upon its discovery, they removed the trash bag--without disturbing its contents--and put it in their shed. They notified law enforcement immediately about its discovery. When law enforcement retrieved the bag a couple of days later, it was still located in the shed. The victim testified she knew it was the trash bag from her bathroom because it contained an ear plug she had discarded a day or two prior to the crime. The testimony shows the State laid a sufficient foundation to support the admissibility of the evidence. In questioning the chain of custody, Newman merely speculates that during the time the trash bag was in the victim's shed, something could have happened to it. This alone is insufficient to meet a defendant's burden to challenge admissibility on the ground of inadequate chain of custody. As the district court found, Newman failed to allege what the chain of custody was or was not in relation to the saliva DNA evidence found in the trash bag and did not allege or show how a challenge to the evidence would have been successful. The district court did not err in holding that Newman "[did] not set forth facts and argument by which the court can find

---

[4]     Additionally, one of the law enforcement officer's testified that he did not remove the trash bag as evidence from the truck when he inventoried the vehicle because, at the time, he did not believe it had evidentiary value to the case. This supported the victim and her husband's assertions and showed that the trash bag was in the vehicle at a time when Newman had possession of the truck.

14

that a question of fact exists relating to whether trial counsel's performance was defective in this regard."

### 4. Failure to follow Newman's directions to negotiate a plea deal

Newman asserts defense counsel provided ineffective assistance by failing to communicate with him or follow his directions to negotiate a plea. He argues he had knowledge of drug activity that would have been helpful to the State in prosecuting other crimes, which later proved to be so, and had defense counsel presented this to the State pending trial, Newman would have been able to take advantage of a plea instead of going to trial. Further, Newman provided an affidavit from his sister, indicating the State had offered a plea, but that defense counsel did not relay that plea to Newman because it was unfavorable.

Notwithstanding the fact there is no constitutional right to a plea offer, a defendant is entitled to effective assistance of counsel in plea negotiations. *See Missouri v. Frye*, ___ U.S. ___, ___, 132 S. Ct. 1399, 1405-08 (2012). When defense counsel fails to communicate a formal plea offer to the defendant, which may be favorable to the defendant, counsel's assistance is deficient. *Id.* at ___, 132 S. Ct. at 1408. To establish prejudice, the defendant must show there was a reasonable probability as to three aspects of the plea: (1) the defendant would have accepted the earlier plea offer had he been afforded effective assistance of counsel; (2) neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented; and (3) the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. *Id.* at ___, 132 S. Ct. 1409-10.

We recognize that Newman's claim in regards to plea negotiations does not present precisely the same question the United States Supreme Court addressed in *Frye*, which only considered a formal plea offer that was never communicated to the defendant. Rather, here, Newman additionally asserts that defense counsel's deficient pretrial performance relating to discovery and noncommunication with Newman resulted in little to no bargaining power in plea negotiations. Still, *Frye* provides persuasive guidance by which we determine Newman fails to raise a genuine issue of fact as to any alleged deficiency by defense counsel. The decisive factor is that Newman did not show, through *admissible* evidence, that a plea offer was either made or was possible. In the record, there is a written memorandum by defense counsel indicating the State was unwilling to "deal" with Newman. This is contradicted only by hearsay provided in

15

the affidavit by Newman's sister, indicating that defense counsel told Newman's sister that the State had offered a deal, but that counsel did not tell Newman because the deal was unfavorable. We have no evidence, upon which we can rely, that raises a genuine issue of fact that defense counsel provided deficient communication or negotiation regarding a plea. Regardless of defense counsel's efforts, or alleged lack thereof, the evidence establishes that the State was not willing to engage in plea negotiations. In cases such as this, where the defendant argues deficient performance by counsel in negotiating a plea, at a minimum, a defendant must show through some admissible evidence that a plea offer was possible. Newman failed to do so.

### 5. Failure to more aggressively pursue the disqualification of the trial judge

In his amended petition for post-conviction relief, Newman asserted ineffective assistance due to defense counsel's failure to more aggressively pursue disqualification of the district court judge and that Newman was prejudiced because the judge, due to bias, imposed harsh sentences. Newman based this claim of bias on the fact that Newman and the judge's son had been in an altercation.[5]

A judge cannot be disqualified for bias or actual prejudice unless the bias renders it impossible that the party could have a fair and impartial trial given the circumstances. *Pizzuto v. State*, 134 Idaho 793, 799, 10 P.3d 742, 748 (2000). It is within the discretion of the trial judge to determine whether disqualification is necessary. *Id.* As to extrajudicial information, judges are generally presumed to be able to disregard that which should not be taken into account. *Id*.

Concerning the judge's purported bias due to the altercation Newman had with the judge's son, Newman does not allege the judge was aware of this altercation, nor does Newman give much context as to when this altercation occurred. Newman mentions that it occurred while he was in school. Newman was in his thirties at the time of trial, which leaves this court to speculate as to whether the altercation occurred some years prior to trial or was fresh in the judge's mind. Such speculation does not constitute evidence demonstrating a ground sufficient

---

[5] On appeal, Newman more broadly asserts he was prejudiced during sentencing because defense counsel's presentation of the absurd defense further biased the judge and, as a result, the judge imposed extremely harsh sentences. As was addressed previously, the claim that defense counsel was deficient and prejudiced Newman by presenting an "absurd defense" was not an issue tried below and the district court did not consider this basis when evaluating defense counsel's failure to more aggressively pursue disqualification of the trial judge. Therefore, we do not consider this argument.

for disqualification that defense counsel should have pursued. Accordingly, Newman did not raise a genuine issue of fact of defense counsel's deficiency that could preclude summary dismissal of this claim.

### 6. Failure to communicate with Newman during the appeal process

Lastly, Newman claims his appellate counsel failed to communicate with him during the appeal process. Newman argues that had he been able to communicate with appellate counsel, he could have presented more issues and his case would have been remanded for resentencing because the sentences imposed were so harsh.

As was previously discussed in regards to Newman's claim that defense counsel failed to communicate with Newman prior to trial, it is insufficient to make a claim of ineffective assistance without alleging how further communication could have altered the results. *See Parrott*, 117 Idaho at 275, 787 P.2d at 261. Newman does not allege what issues, beyond sentencing, should have been addressed on appeal, but were not, or how further consultation with his appellate counsel would have caused this Court to reverse or remand on appeal. In fact, the precise issue dealt with on Newman's appeal was the harshness of the sentences. *Newman*, Docket No. 30796. This Court recognized the sentences were "unusually harsh for a set of crimes arising out of a single criminal episode," but we concluded the district court did not abuse its discretion in light of Newman's criminal record, his minimal chance for rehabilitation, his dishonesty, and the lack of genuine remorse. Without identifying additional issues that should have been addressed, Newman failed to establish any genuine issue of fact that his appellate counsel was deficient.

## IV.

## CONCLUSION

We conclude Newman failed to establish a genuine issue of fact as to deficiency of counsel on all but a single claim of ineffective assistance of counsel. On the claim where Newman establishes a genuine issue of fact as to deficiency, he failed to show any genuine issue of fact as to prejudice, and to survive a motion for summary disposition, Newman must establish both. Accordingly, the district court did not err in summarily dismissing Newman's amended petition for post-conviction relief. Based on our review, we need not reach the issue as to whether we should apply *Strickland's* ineffective assistance of counsel standard by cumulating the effect of counsel's deficiencies in order to find prejudice sufficient to meet the second prong

of that standard.  Therefore, we affirm the district court's judgment of dismissal of Newman's amended petition for post-conviction relief.

Chief Judge GRATTON and Judge LANSING **CONCUR.**