# IN THE SUPREME COURT OF THE STATE OF IDHO
## Docket No. 43673

| | |
|---|---|
| **STATE OF IDAHO,** | **Boise, May 2017 Term** |
| **Plaintiff-Respondent,** | **2017 Opinion No. 99** |
| **v.** | **Filed: September 12, 2017** |
| **DAROL KEITH ANDERSON,** | **Karel A. Lehrman, Clerk** |
| **Defendant-Appellant.** | **SUBSTITUTE OPINION, THE COURT'S PRIOR OPINION DATED JULY 11, 2017 IS HEREBY WITHDRAWN.** |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

The district court's judgment is <u>vacated in part</u> and <u>affirmed in part</u>. This case is <u>remanded</u> to the district court for future proceedings consistent with this Opinion.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for respondent. Theodore S. Tollefson argued.

Eric D. Fredericksen, State Appellate Public Defender, Boise, attorney for appellant. Jenevieve C. Swinford argued.

_____

JONES, Justice

## I. NATURE OF THE CASE

In a case arising out of Kootenai County, Darol Keith Anderson ("Anderson") appeals his convictions for felony domestic battery and misdemeanor domestic battery. Anderson asserts that the district court erred when it admitted the preliminary hearing testimony of his alleged victim, Erica Messerly ("Messerly"), after finding that she was unavailable to testify at his trial due to mental illness. Anderson also asserts that the district court abused its discretion when it allowed

Officer Spencer Mortensen ("Officer Mortensen") to testify that the injuries that he had observed on Messerly's person were consistent with her allegations against Anderson. He argues that Officer Mortensen's testimony constituted impermissible vouching for Messerly's truthfulness.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of September 7, 2014, Officer Mortensen was dispatched to investigate reports of a physical domestic dispute. On arriving at the scene, Officer Mortensen encountered Messerly, whom he described as appearing to be nervous. Officer Mortensen noted that Messerly had bruises and cuts on her neck and face. Messerly proceeded to describe the following events.

Shortly after midnight on the morning on September 6, 2014, Messerly and Anderson, her husband of three months, were lying in bed. Messerly was angry because she had found explicit photographs of another woman on Anderson's cell phone. Messerly kicked Anderson in the back, causing him to partially fall out of bed. Anderson jumped back onto the bed, straddled Messerly, and squeezed her trachea until she was unable to breathe. Anderson choked Messerly for approximately five minutes, but she did not lose consciousness. While Anderson was choking her, Messerly attempted to scratch his face with her fingernails. After Anderson stopped choking Messerly, he walked downstairs. Messerly followed him downstairs and grabbed his cell phone out of his hands. She proceeded to drop his cell phone into a toilet. Anderson punched her in the face with his right fist. Messerly fled her home, and Anderson locked the doors behind her. On discovering that the doors were locked, Messerly sought help from a neighbor to gain reentry. When she returned with the neighbor, the door was unlocked. She entered her home with the neighbor and found Anderson hiding in the laundry room holding a metal pipe. Anderson proceeded to threaten the neighbor with the pipe and accuse him of sleeping with Messerly. When Messerly and the neighbor attempted to leave, Anderson grabbed her by the hair and pulled her back inside. Inside the home, Anderson punched Messerly one time in the face, briefly knocking her unconscious. She fell to the floor. While Messerly was on the floor, Anderson punched her in the back of the head and neck. After regaining consciousness, Messerly stood up, walked to a couch, and sat down. She begged Anderson to return to bed, but he refused. Anderson grabbed a steak knife and held it to her throat. Messerly grabbed Anderson by the abdomen and he dropped the knife. Anderson then bit Messerly on the neck and shoulder. Anderson left the room and returned with the metal pipe. He swung the pipe at Messerly's head, but stopped the swing before it hit her. He then jabbed the pipe into Messerly's left side.

2

Messerly attempted to flee to the garage, and Anderson punched her in the back of the head twice. Messerly finally escaped from the residence and walked back to the neighbor's residence. The neighbor drove Messerly to the home of Melissa Watts ("Watts").

In corroboration of her statements to Officer Mortensen, Messerly showed him a mark on the right side of her nose where she was allegedly punched, a small cut on her throat allegedly caused by the knife, bite marks on her neck and shoulder, and a deep purple bruise on her right side where she was allegedly jabbed with the pipe. Messerly took Officer Mortensen into her residence, but was unable to locate the knife or the pipe.

Officer Mortensen next spoke with Watts. Watts told Officer Mortensen that on September 6, 2014, at 2:30 P.M., she and Messerly had returned to Messerly's residence in order to take some of Messerly's clothing. While they were there, Anderson kicked Messerly in the stomach twice. Messerly and Watts told him to leave the residence, which he did. Officer Mortensen spoke to Messerly about this second incident. Messerly confirmed that she had been kicked.

Officer Mortensen next spoke with Lawrence Preston ("Preston"), the neighbor who had called the police on September 7, 2014. Preston stated that immediately prior to calling the police, he had observed Messerly taking Anderson's cell phone in their driveway and attempting to keep it away from him. Anderson then grabbed Messerly by the hair and pulled her into the house. At trial, Preston would testify that he had seen Anderson punch Messerly in the face during this altercation.

While Officer Mortensen was speaking with witnesses, Officer A. Winstead ("Officer Winstead"), who had been called in to assist Officer Mortensen, made contact with Anderson over the phone. Anderson stated that Messerly and Watts were lying and that he had never touched Messerly. Anderson refused to meet with Officer Winstead to give a statement in person.

On October 1, 2014, Officer N. Lowry ("Officer Lowry"), a third officer assigned to the case, was able to contact Anderson by phone. Anderson again denied harming Messerly, claiming that Messerly had kicked him during the altercation on the morning of September 6, 2016, and had hit him when she had returned later that day.

On January 29, 2015, the State filed an Amended Criminal Complaint, charging Anderson with Felony Domestic Battery (regarding the allegations of battery on September 6,

3

2014), Aggravated Assault (regarding the allegations involving the knife), Attempted Strangulation, and Misdemeanor Domestic Battery (regarding the allegations of battery on September 7, 2014).

On February 3, 2015, the magistrate court conducted a preliminary hearing in the case. Messerly testified at the hearing to the events that she had described to Officer Mortensen. Messerly testified that on September 6, 2014, Anderson had punched and choked her, that he had briefly knocked her unconscious, that he had swung a long metal pipe at her head and then jabbed it into her side, that he had held a knife to her throat, and that he had bitten her neck. At times during her testimony, Messerly stated that Anderson's presence in the courtroom was distressing to her. She needed to take multiple breaks in order to complete her testimony. Following her direct testimony, Anderson cross examined Messerly.

At the close of the preliminary hearing, the State amended its complaint to add an additional count of aggravated assault (with the metal pipe). The magistrate court found that probable cause existed with respect to each of the five counts. The district court set trial for July 20, 2015.

On June 19, 2015, Messerly checked into the Kootenai Behavioral Health Center (the "KBH"). She was diagnosed with a Post-Traumatic Stress Disorder and Substance Use Disorder.

On July 16, 2015, the State filed a motion in limine seeking to declare Messerly unavailable to testify at trial and seeking to admit a transcript of her testimony at the preliminary hearing. In support of that motion, the State submitted the affidavit of Dr. Eric J. Heidenreich, M.D. ("Dr. Heidenreich"), dated July 16, 2015, which provided, in part, as follows:

Comes Now, Eric J. Heidenreich, M.D., and hereby deposes and swears:

. . . .

2. That Erica Messerly is currently, and has been, a patient at KBH since 6/19/2015;

3. That I have examined Ms. Messerly and have had multiple opportunities to observe her and interact with her over the past few days;

. . . .

6. Ms. Messerly presents as tearful and emotionally labile;

7. It has been my observation, and that of my staff, that any significant emotional distress typically is followed by Erica decompensating, which in turn, increases her risk for relapse in the context of her addiction to controlled substances;

. . . .

4

9. Ms. Messerly's prognosis is poor to begin with and I would anticipate having to testify would result in further deterioration of her current, already fragile condition;

10. Testifying would put Ms. Messerly at substantial risk for relapse on controlled substances and pose a significant risk to her mental health;

11. I emphatically recommend that Ms. Messerly not testify at this time or any in the near future.

On July 20, 2015, the district court held a hearing at which it addressed the motion in limine. Lisa Bunker ("Bunker"), the clinical manager of the chemical dependency unit at KBH, testified. Bunker corroborated Dr. Heidenreich's diagnoses of Substance Use Disorder and Post-Traumatic Stress Disorder. She stated that in her professional judgment it would not be appropriate for Messerly to testify at trial:

> She has a very fragile, if you will, mental health state, and it is our belief that it would re-traumatize her at this point in time. Our -- we would prefer for her to stabilize from a mental health standpoint. Our -- our goal for her is to increase her ability to stay mentally well and psychiatrically stabilized, and it's too soon in her very early recovery from [sic] her mental health.
> . . . .
> So we talk about in -- in recovery, mental health and substance abuse, the first 90 days being a really important time in a person's early recovery. So I wouldn't go near any kind of revisiting this in the next 90 days. That would be my professional -- and then -- and then to evaluate, but have the psychiatrist evaluate her mental health professionals evaluate her to see what in 90 days it looks like for her.

Following Bunker's testimony, the district court held as follows:

> I am going to find, I do find, that Miss Messerly is unavailable. . . .
>
> . . . .
>
> I do find that a continuance of this trial is not a practical option. Mr. Anderson has been steadfast, adamant in his not wanting to waive his right to a speedy trial . . . .
>
> . . . .
>
> . . . and there is no indication that Miss Messerly would be available between now and October.
>
> . . . .
>
> As far as opportunity to have sufficient cross-examination at the preliminary hearing, I read the preliminary hearing transcript, and while certainly Mr. Anderson was disruptive at the beginning, Miss Messerly had difficulty throughout the proceedings, which I think just lends credence to Dr.

5

Heidenreich's observations and Miss Bunker's testimony and observations from the witness stand today.

In accordance with the district court's decision on the motion in limine, at the time of trial, the State read Messerly's testimony from the preliminary hearing regarding the events that occurred on September 6, 2014.

Officer Mortensen also testified at trial. Part of his testimony regarded the injuries he observed on Messserly's person on September 7, 2014. Specifically, Officer Mortensen testified as follows:

Q: After having that conversation with Miss Messerly, did you observe any injuries on her?

A: I did.

Q:  Would you please describe as best you can the injuries you observed on Miss Messerly?

A:  There was [sic] several that I observed. . . . I observed a cut on her nose, and her eyes were starting to blacken on the interior of the eyes, which was consistent with what she told me had happened.

I observed a little straight line kind of cut mark right on her neck, lower part of her neck, was also consistent with her story.

. . . .

I observed a large area of immediate bruising on the right side of her neck, which is also consistent.

. . . .

I observed a bite mark . . . what appeared to be a bite mark on her right shoulder, also consistent . . . .

. . . .

I also observed on her left side, her oblique area, a large bruise in the form of a circle, was also consistent.

. . . .

I observed several other bruises, fresh bruises on her right forearm and on her other arm, which I – they were new, looked like fresh bruises.

Each time Officer Mortensen used the term consistent, Anderson objected, claiming that Officer Mortensen was "vouching for [Messerly's] credibility."

The jury found Anderson guilty of Felony Domestic Battery (for his actions on September 6, 2014) and Misdemeanor Domestic Battery (for his actions of September 7, 2014).

The jury found Anderson not guilty of the two aggravated assault charges and attempted strangulation. The district court sentenced Anderson to ten years with four years fixed.

Anderson appealed.

### III. ISSUES ON APPEAL

1. Did the district court err when it admitted Messerly's testimony from the preliminary hearing?

2. Did the district court abuse its discretion by admitting Officer Mortensen's testimony?

### IV. STANDARD OF REVIEW

When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard. *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163–64, 45 P.3d 816, 819–20 (2002). "To determine whether a trial court has abused its discretion, this Court considers whether it correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason." *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 51, 995 P.2d 816, 821 (2000).

Constitutional questions are reviewed de novo. *State v. Dunlap*, 155 Idaho 345, 377, 313 P.3d 1, 33 (2013).

*State v. Jones*, 160 Idaho 449, 450, 375 P.3d 279, 280 (2016).

### V. ANALYSIS

**A. The district court erred when it admitted Messerly's testimony from the preliminary hearing because the State failed to establish that Messerly was unavailable to testify.**

Anderson asserts on appeal that the admission of Messerly's preliminary hearing testimony was error. He reasons that under both the Confrontation Clause in the Sixth Amendment of the United States Constitution and Idaho Rule of Evidence 804, preliminary hearing testimony is not admissible unless the declarant is unavailable at trial. Messerly was not unavailable, Anderson argues, because "Ms. Messerly's mental illness was not so severe as to render her unavailable to testify." Anderson argues that:

> Ms. Messerly was diagnosed with PTSD and substance use disorder. These mental health issues do not satisfy "extreme circumstances" to excuse her from testifying. . . . Ms. Messerly was not committed to a psychiatric hospital or diagnosed with any psychotic disorders. In fact, she was discharged from KBH. There was no evidence that Ms. Messerly's memory was impaired or distorted by her mental health issues. There was no evidence that she refused to testify or would not appear at trial. There was no evidence that she was suicidal or a danger to others. There was no evidence of permanent psychological damage if she testified. There was no evidence that any temporary psychological effect could

7

not be reversed through her treatment with KBH. In all, the possible harm to Ms. Messerly fell in the category of the normal and expected "adverse emotional or psychological effects" or "anguish" due to the nature of the proceedings.

. . . .

The State did not meet its burden to establish that Ms. Messerly would experience substantial trauma or "grave risks" to her mental health. And the district court did not act consistently with the applicable legal standards by declaring Ms. Messerly unavailable.

Anderson next argues that the district court's error was not harmless. He reasons that:

The State must prove, beyond a reasonable doubt, that the error complained of did not contribute to the verdict obtained. . . .

. . . .

The State cannot meet its burden in this case. Ms. Messerly's testimony was vital to proving the September 6 charge of felony domestic battery. . . . No one besides Ms. Messerly, and later Mr. Anderson in his defense, testified as to the events of September 6.

The State argues that "[t]he district court had substantial competent evidence that forcing Ms. Messerly to testify on either July 20 or 21 would result in severe harm to her mental health." Further, the State argues that Anderson has failed to show the district court's finding was clearly erroneous. As evidence supporting the district court's conclusion, it cites the testimony of Dr. Heidenreich and Bunker that testifying could result in the deterioration of Messerly's mental condition.

The State also claims that any error was harmless, because "[t]he result would have been the same even if the jury had not heard Ms. Messerly's preliminary hearing transcript." The State points out that, with respect to the September 6, 2014, altercation, Anderson himself admitted that he grabbed Messerly by her throat and that he punched her hard enough to knock her out. It also notes that both Officer Mortensen and Preston testified with respect to Messerly's injuries, and the State introduced pictures of those injuries.

With respect to the September 7, 2014, altercation, the State argues that Messerly did not testify. Her testimony was limited to the events on September 6, 2014. Accordingly, it is not possible that the misdemeanor conviction was affected by the admission of Messerly's preliminary hearing testimony.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against

8

him." U.S. Const. amend. VI, § 1. "[T]his provision [also known as the Confrontation Clause] bars admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Davis v. Washington,* 547 U.S. 813, 821 (2006) (internal citations omitted). The term "testimonial . . . applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial." *Crawford v. Washington,* 541 U.S. 36, 68 (2004). It is the proponent of the testimony that has the burden to establish unavailability. *State v. Perry*, 144 Idaho 266, 269, 159 P.3d 903, 906 (Ct. App. 2007) (citing *State v. Button*, 134 Idaho 864, 868, 11 P.3d 483, 487 (Ct. App. 2000)). There have been numerous cases decided by this Court in which preliminary hearing testimony was found admissible because it was proven that the declarant became unavailable before trial. *See, e.g. State v.* Richardson, 156 Idaho 524, 528–30, 328 P.3d 504, 508–10 (2014); *State v. Sepulveda*, 161 Idaho 79, ___, 383 P.3d 1249, 1254 (2016).

However, unavailability due to mental illness is an issue of first impression for this Court. Likewise, despite the importance of the Confrontation Clause, relatively little federal clarification has been provided with respect to what makes a witness unavailable. Federal Rule of Evidence 804(a)(4), which is substantially similar to Idaho Rule of Evidence 804(a)(4), identifies mental illness as one criteria for unavailability, however, the United States Supreme Court has not issued any opinions establishing a standard for unavailability due to mental illness. Accordingly, state and federal courts have taken it upon themselves to establish standards for unavailability due to mental illness.

For example, in *Warren v. U.S.,* the Court of Appeals for the District of Columbia was presented with a case in which a lower court held that a rape victim was "psychologically unavailable" to testify. 436 A.2d 821, 824 (1981). The D.C. Court of Appeals reviewed the United States Supreme Court precedent on the matter and determined that "the constitutional question appears to be at what point, if any, is it no longer reasonable to require the government to produce witnesses at the risk of their psychological health." *Id.* at 827.

The D.C. Court of Appeals concluded that the witness was unavailable on the basis that "experts agreed that she would undergo far greater mental anguish than normally accompanies court appearances of the victims of rapes (and presumably other such crimes as kidnapping, terrorism, and hijacking) and that her appearance in court . . . would be likely to lead to

severe psychosis, even possible suicide." *Id.* at 828. In *Warren*, the witness had been diagnosed with narcissistic personality disorder and as vulnerable to transient psychosis as a result of stress. *Id.* at 829. She informed the doctor that she would rather be jailed for contempt than testify. The D.C. Court of Appeals concluded:

> We do not intend to sanction a new category of medical unavailability in all cases where witnesses are likely to suffer adverse emotional or psychological effects as a result of testifying against their assailants. But in the extreme circumstances presented here, we agree that the grave risks to the witness' psychological health justify excusing her live in-court testimony. The expert testimony relating to Reed's mental health established that there was both a high likelihood of temporary psychological injury, perhaps even psychosis, and a possibility of permanent psychological injury.

*Id.* at 829–30.

In *Burns v. Clusen*, the Seventh Circuit Court of Appeals reviewed a state district court determination that a witness ("L.L.") diagnosed with acute schizophreniform disorder was unavailable to testify. 798 F.2d 931, 937 (1986). The circuit court reasoned that:

> The burden of proving the unavailability of the witness rests upon the party offering the prior testimony. If there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith may demand their effectuation. *Ohio v. Roberts*, 448 U.S. at 74, 100 S.Ct. at 2543. The lengths to which the prosecution must go to produce a witness is a question of reasonableness. *California v. Green*, 399 U.S. 149, 189 n. 22, 90 S.Ct. 1930, 1951 n. 22, 26 L.Ed.2d 489 (1970).
>
> . . . .
>
> As to severity, mental illness itself may not automatically render a witness unavailable. The judge must consider the symptoms, what tasks a witness is then capable of. While all victims of violent crimes may suffer emotional trauma, some victims may suffer far greater anguish than normally accompanies court appearances.
>
> . . . .
>
> Given those considerations, there is no question that L.L. was unavailable in early September 1980 . . . . The prosecutor reasonably abandoned the effort to produce L.L. when she learned of L.L.'s hospitalization. L.L.'s mental condition at the time of admission to the psychiatric ward was undoubtedly severe— "catatonic stupor with hallucinations and delusions," and recovery in the near future was speculative.

*Id.* at 937–38. Despite finding that the evidence showed that L.L. had been initially unavailable, the circuit court concluded, that by the time the judge made her unavailability decision, too much

time had passed from the initial diagnosis and it was unclear whether or not the witness was still suffering from the same level of mental illness. *Id.* at 942.

> [W]e hold that the State has not fulfilled its burden of proving L.L.'s unavailability as a precedent to offering her prior testimony. The prosecution has neither made stringent efforts to show that L.L. was unavailable, nor produced affirmative proof of L.L.'s actual unavailability at the time of trial in March 1981. Instead we are left with an out-dated prediction, one which may or may not have been accurate on the eve of trial.

*Id.*

The determination of whether a witness is unavailable, such that preliminary hearing testimony is admissible, is evidentiary in nature. Evidentiary decisions are reviewed under an abuse of discretion standard. *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163–64, 45 P.3d 816, 819–20 (2002). Accordingly, we will review the district court's decision to approve the motion in limine under an abuse of discretion standard.

The crux of this case is whether the district court acted consistent with applicable legal standards. We hold that the district court did not. Specifically, we hold that the district court abused its discretion in admitting the motion in limine because the State failed to produce sufficient evidence to demonstrate that Messerly was unavailable to testify at the time of trial. The affidavit from Dr. Eric J. Heidenreich and the testimony of Lisa Bunker are insufficient to establish that Messerly was physically, emotionally, or mentally precluded from testifying at trial. Dr. Heidenreich opined that "testifying would put Ms. Messerly at substantial risk for relapse on controlled substances and pose a significant risk to her mental health." Bunker testified that "[Messerly] has a very fragile, if you will, mental health state, and it is our belief that it would re-traumatize her at this point in time." While this Court is sensitive to the adverse emotional effects associated with providing testimony of a traumatic event, the aforementioned testimony does not demonstrate that Messerly was unavailable. In this case, the concern was regarding a possible relapse due to her fragile mental state. As noted by the court in *Burns*, the severity of the mental illness itself may not automatically render a witness unavailable. The judge must consider the symptoms, what tasks a witness is then capable of. *See Burns*, 798 F.2d 931, 937 (1986). Indeed, Messerly was able to provide testimony, albeit with breaks, at the preliminary hearing.

Because Dr. Heidenreich's affidavit and Bunker's testimony are not sufficient evidence to establish that Messerly's mental illness made her unavailable to testify, the district court erred

11

when it granted the motion in limine to allow her prehearing testimony to be read at trial. Further, the district court's error was not harmless. In cases where an alleged constitutional violation was followed by a contemporaneous objection, this Court applies the harmless error test. *State v. Perry*, 150 Idaho 209, 221, 245 P.3d 961, 973 (2010) (citing *Chapman v. California*, 386 U.S. 18, 21–24 (1967)). Under this test, "[a] defendant appealing from an objected-to, non-constitutionally-based error shall have the duty to establish that such an error occurred, at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt." *Id*. at 222, 245 P.3d at 974. "In other words, the error is harmless if the Court finds that the result would be the same without the error." *State v. Almaraz*, 154 Idaho 584, 598, 301 P.3d 242, 256 (2013).

The State argues that the result would have been the same despite the admission of Messerly's preliminary hearing testimony because of other evidence that was properly admitted, such as: Anderson's testimony regarding the events of September 6, 2014; testimony from Officer Mortensen and Preston regarding Messerly's injuries; and photographs that the State introduced of Messerly's injuries. However, we hold that this evidence is not sufficient to establish, "beyond a reasonable doubt," that the decision to allow Messerly's preliminary hearing testimony, in lieu of allowing Anderson to confront her, was harmless.

**B.    The district court did not abuse its discretion by admitting Officer Mortensen's testimony.**

On appeal, Anderson argues that Officer Mortensen erroneously testified with respect to Messerly's credibility. A ruling on this argument is not necessary since we have already vacated the district court's sentence. However, because the issue regarding the admissibility of Officer Mortensen's testimony has the potential to arise again in any retrial, we will address it.

Anderson asserts that the district court abused its discretion by admitting Officer Mortensen's testimony. He argues that a lay witness cannot give an opinion as to another witness' credibility, and "Officer Mortensen's testimony on Ms. Messerly's 'consistent' story did 'nothing but vouch' for the credibility." He concludes that:

> Whether Mr. Anderson committed an unjustified battery against Ms. Messerly or acted in self-defense came down to a credibility determination between Mr. Anderson and Ms. Messerly. Because Ms. Messerly did not testify at trial, the jury had no way to assess her demeanor and minimal information to determine her credibility–except, of course, the opinion of Officer Mortensen. The State cannot

12

prove Officer Mortensen's vouching for Ms. Messerly's credibility did not contribute to the guilty verdict on the September 6 charge.

The State responds that:

> Officer Mortensen did not vouch for the inherent trustworthiness of Ms. Messerly. Officer Mortensen testified that her visible injuries were consistent with the attacks she reported. Testimony that physical evidence is consistent with a witness' version of events is not improper vouching.

"The Supreme Court of the Territory of Idaho stated over one-hundred years ago, that a question calling 'for the opinion of one witness as to the truthfulness of another . . . is clearly an invasion of the province of the jury, who are the judges of the credibility of witnesses.'" *State v. Perry*, 150 Idaho 209, 229, 245 P.3d 961, 981 (2008) (quoting *People v. Barnes,* 2 Idaho 148, 150, 9 P. 532, 533 (1886)). "This Court has repeatedly recognized that a lay or expert witness cannot give an opinion of another witness's credibility or encroach on the fact-finding functions of the jury." *State v. Parker*, 157 Idaho 132, 148, 334 P.3d 806, 822 (2014).

In *Perry*, this Court found that the prosecutor committed misconduct when he elicited testimony from a foster father, foster mother, and an investigating officer as to the truthfulness of the victims' allegations of lewd and lascivious conduct. 150 Idaho at 229, 245 P.3d at 981. Specifically, in that case, the prosecutor asked the foster mother if the victims had ever been dishonest with her. The foster mother replied that the victims had, but only about immaterial things. *Id.* at 228–29, P.3d at 980–81. The prosecutor then asked the foster father during redirect examination whether he noticed any signs of dishonesty on the girls' faces when they reported the allegations. *Id.* The foster father replied that he had not. *Id.* Finally, the prosecutor asked the investigating officer on direct examination whether he believed that the victims were being truthful in their allegations. *Id.* The investigating officer replied that he believed the victims were being truthful. *Id*. This Court reasoned that these statements were impermissible "vouching testimony." *Id.*

In *State v. Ehrlick*, this Court held that a district court erred in allowing an expert to opine as to whether or not eyewitness reports that the defendant had been seen at certain times were credible. 158 Idaho 900, 910, 354 P.3d 462, 472 (2015). This Court held that the opinion directly related to the credibility of the eyewitness and was therefore error, albeit harmless error. *Id.*

The district court did not abuse its discretion in allowing Officer Mortensen to opine that the injuries that he observed on Messerly's person were consistent with her description of the

13

altercation. While it is true that this Court has definitively established that a witness may not opine as to the truthfulness of another witness, in this case Officer Mortensen was not opining as to the truth of Messerly's testimony. Rather, Officer Mortensen testified as to injuries, which he observed, and then testified as to whether those injuries could have been caused by certain acts alleged to have been committed. Officer Mortensen made no comment as to whether or not Messerly was credible. He did not discuss her demeanor or whether she appeared trustworthy while testifying. He made no comment as to whether or not he believed Messerly's testimony was true. Any of these things would have infringed upon the province of the jury. However, testifying as to whether or not an alleged action could factually cause an observed injury is not the same as testifying to credibility. Officer Mortensen testified that certain alleged facts could be true, not that he believed said facts were or were not true. This can sometimes be a difficult distinction, because giving one's opinion on an alleged fact often has the effect of supporting or casting doubt on another witnesses' testimony. However, testifying to a factual consistency or inconsistency is not the equivalent of testifying to truthfulness or credibility.

This distinction is consistent with this Court's precedent. In *Perry*, for example, the prosecutor asked certain witnesses point blank if they thought that other witnesses were telling the truth. In *Ehrlick*, the prosecutor asked an expert witness whether an eyewitness' testimony was "credible." The opinion testimony here is fundamentally different. Instead of asking Officer Mortensen about Messerly's credibility, the prosecutor asked Officer Mortensen whether his own observations were consistent with certain alleged facts. Officer Mortensen's opinions likely affected the jury's assessment of whether Messerly was credible, but they did not expose his own opinion as to her credibility.

## VI. CONCLUSION

For the foregoing reasons, the district court's judgment is hereby vacated in part and affirmed in part. Anderson's felony conviction is hereby vacated. However, Anderson's misdemeanor conviction related to the events on September 7, 2014, was untainted by the district court's error because Messerly's preliminary hearing testimony was limited to the events on September 6, 2014. Therefore, Anderson's misdemeanor conviction is affirmed. We also affirm the district court's admission of Officer Mortensen's testimony. The matter is hereby remanded to the district court for future proceedings consistent with this Opinion.

Chief Justice BURDICK, Justices EISMANN, HORTON and BRODY, CONCUR.

14