IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 48628

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **Boise, May 2021 Term** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Opinion Filed: February 3, 2022** |
| | ) | |
| **v.** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **MARIO A. REYES,** | ) | **SUBSTITUTE OPINION, THE** |
| | ) | **COURT'S PRIOR OPINION** |
| **Defendant-Appellant.** | ) | **DATED OCTOBER 19, 2021 IS** |
| | ) | **HEREBY WITHDRAWN** |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County.  George A. Southworth, District Judge.

The judgment of the district court is vacated, and the case is remanded for a new trial.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for appellant, Mario A. Reyes. Andrea W. Reynolds argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent, State of Idaho. Andrew V. Wake argued.

---

STEGNER, Justice.

Mario Reyes appeals a jury verdict convicting him of domestic battery, attempted strangulation, and aggravated assault. Reyes appealed to the Idaho Court of Appeals, which affirmed his convictions. Reyes petitioned for review by this Court, which we granted.

On appeal, Reyes requests that his convictions be vacated. Reyes first argues that several evidentiary issues, including the admission of irrelevant and prejudicial evidence, rendered his trial unfair. Reyes next argues that the district court abused its discretion when it found that the victim was unavailable to testify at trial under Idaho Rule of Evidence 804(a)(5) and allowed her preliminary hearing testimony to be read into the record. Additionally, Reyes argues that the prosecutor's closing argument impermissibly implied that the victim did not testify because she feared Reyes. Finally, Reyes argues that these errors, when taken together, deprived him of his right to due process and a fair trial. For the reasons set forth below, we vacate Reyes' convictions.

1

On July 16, 2017, two officers with the Caldwell Police Department were dispatched to Reyes' residence after receiving a 911 "hang up" call. When the first officer arrived, he observed Reyes and another individual on the front porch of the residence. The officer ordered them to stop moving. Reyes attempted to re-enter the residence, but the officer followed him and placed him in handcuffs. An officer then placed Reyes in the back of a police vehicle, where another officer interviewed him several minutes later. The second officer asked Reyes what had happened, to which Reyes responded that he did not know. Reyes repeatedly denied harming his wife.

Inside the residence, officers found Marina Reyes (Marina)[1] lying on the floor with her head resting on a blood-soaked pillow. When asked whether Reyes had hit her, Marina told officers that she did not remember what had occurred. There were two witnesses present in the home: Marina's niece and her niece's husband. Both witnesses told officers that Reyes and Marina had been fighting, and that Reyes had beaten her. Officers then placed Reyes under arrest.

Reyes was charged with domestic battery, attempted strangulation, aggravated battery, and malicious injury to property. A preliminary hearing was held, at which both Marina and her niece testified that Reyes had beaten her. Specifically, Marina testified that Reyes had hit her "all over," "choked her," and had thrown a clothes iron at her. She also testified that as she was trying to leave with her niece, Reyes pulled her to the ground by her hair and then kicked her in the nose. Reyes' counsel cross-examined Marina. The testimony provided by Marina's niece at the preliminary hearing was consistent with Marina's. Reyes was bound over to the district court, and a criminal information was filed.

A three-day jury trial was held from May 2 through 4, 2018. Marina's niece and her niece's husband testified that they had heard a fight occurring in Reyes' bedroom. They were eventually able to open the bedroom door, where they saw Reyes with one hand around Marina's neck and holding a clothes iron in the other. The two witnesses testified that they separated Reyes and Marina, and as they exited the bedroom, Reyes pulled Marina down to the ground by her hair and kicked her in the nose. At trial, Reyes testified in his own defense, during which the State was permitted to describe a police report to the jury that "allege[d Reyes had] committed the criminal offenses of attempted strangulation, domestic battery, malicious injury to property, and witness

---

[1] In order to make it easier to distinguish between Mr. and Mrs. Reyes, we have referred to Mrs. Reyes as Marina. No disrespect is intended to Mrs. Reyes by the use of her first name.

intimidation[ ]" which involved previous charges. The State also elicited testimony at trial that Reyes was on probation on the night in question, and therefore was prohibited from consuming alcohol and being present in a bar, which Reyes had been prior to the incident with Marina.

After the State rested, the district court dismissed count four of the information—malicious injury to property. The jury convicted Reyes of domestic battery, attempted strangulation, and aggravated assault. The district court imposed an aggregate sentence of five years fixed, followed by five years indeterminate. Reyes appealed to the Idaho Court of Appeals, which affirmed his convictions. *See State v. Reyes*, No. 46439, 2020 WL 3496329 (Idaho Ct. App. June 29, 2020). This Court granted Reyes' petition for review.

## II.  STANDARD OF REVIEW

> "When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Chernobieff*, 161 Idaho 537, 539, 387 P.3d 790, 792 (2016) (quoting *State v. Lute*, 150 Idaho 837, 839, 252 P.3d 1255, 1257 (2011)). "This Court is not merely reviewing the correctness of the Court of Appeals' decision; rather, this Court is hearing the matter as if the case were on direct appeal from the trial judge's decision." *Gilpin-Grubb v. State*, 138 Idaho 76, 79, 57 P.3d 787, 790 (2002).

*Marsalis v. State*, 166 Idaho 334, 458 P.3d 203, 208 (2020).

"The question of whether evidence is relevant is reviewed de novo, while the decision to admit relevant evidence is reviewed for an abuse of discretion." *State v. Hall*, 163 Idaho 744, 781, 419 P.3d 1042, 1079 (2018) (quoting *State v. Shutz*, 143 Idaho 200, 202, 141 P.3d 1069, 1071 (2006)).

> To determine if a trial court abused its discretion, this Court considers whether the trial court (1) perceived the issue as one of discretion, (2) acted within the outer boundaries of that discretion, (3) acted consistently with the legal standards applicable to the specific choices available to it, and (4) reached its decision by an exercise of reason.

*State v. Abramowski*, 164 Idaho 857, 860, 436 P.3d 678, 681 (2019) (citing *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

## III.  ANALYSIS

On appeal, Reyes contends that multiple errors occurred during his trial, two of which were conceded by the State. Because these multiple errors rendered Reyes' trial unfair, we vacate his convictions under the cumulative error doctrine.

3

**A. Errors acknowledged by the State.**

We begin by noting that the State has acknowledged that two substantive errors occurred at trial. First, the State concedes that it was error for the prosecutor to list previous charges brought against Reyes during Reyes' testimony at trial. Second, the State also concedes that "the district court erred when it allowed the prosecutor to question Reyes about his felony probation and the probation conditions that he not be present in a bar or drink alcohol." While acknowledging these errors, the State maintains they were harmless.

1. Listing of prior charges

At trial, Reyes testified in his own defense. On cross-examination by the State, the prosecutor questioned Reyes regarding a 2015 incident with his wife as follows: "Q. [By prosecutor]: This is a report from the Caldwell Police Department dated November 8th of 2015. It alleges you committed the criminal offense[s] of attempted strangulation, domestic battery, malicious injury to property, and witness intimidation."

The State concedes that it was error for the prosecutor to have read aloud the charges from the 2015 police report involving Reyes in the presence of the jury. Idaho Rule of Evidence 404(b) prohibits the use of evidence of "a crime, wrong, or other act" "to prove a person's character." I.R.E. 404(b)(1)-(2). Rule 404 clearly aims to prevent a jury from making the impermissible assumption that if a defendant acted in a certain way in the past, he is likely to have acted accordingly in the present. *See* WRIGHT & MILLER, FED. PRAC. & PROC. EVID. § 5243 (2d ed. 2021) ("When [] jurors convict because the prosecutor shows them many crimes for which the defendant has not been convicted, this may impair the defendant's constitutional right to be proven guilty of the *charged* crime 'beyond a reasonable doubt.'") (italics added). Three of the prior allegations against Reyes were identical to the charges he faced at trial, creating an even greater likelihood that the jury would infer that he must have acted similarly in the case at bar. As such, the State's listing the prior crimes with which Reyes had been previously charged created a high likelihood of unfair prejudice and was therefore obviously error as conceded by the State.

2. Probation status

Also during the State's cross-examination of Reyes, the following exchange took place:

Q: On July 16 of 2017[,] you were on felony probation, correct?
A: Yes.
Q: So you were not supposed to be in a bar, were you?
Mr. Prior [defense counsel]: Judge, I'm going to object to relevance.

4

THE COURT: Overruled.
THE WITNESS: Correct.
Q. [By the prosecutor]: And you were not supposed to be drinking either, were you?
A: Correct.

The State concedes "that the district court erred when it allowed the prosecutor to question Reyes about his felony probation status and the probation conditions that he not be present in a bar or drink alcohol." The State also concedes that it was error for the district court to allow the prosecutor to inquire about Reyes' status as a probationer. All relevant evidence may be admitted at trial. *See* I.R.E. 401, 402. The bar for relevancy is typically low, requiring only that the disputed evidence have "*any* tendency to make a fact more or less probable." I.R.E. 401 (italics added). The evidence must also constitute a "fact [] of consequence in determining the action." *Id.* Simply put, the State's introduction of Reyes' felony probation status and violation of the terms of his probation did not have any tendency to make it more or less probable that Reyes had harmed Marina, nor was it a fact of consequence in determining Reyes' guilt. The evidence was not only irrelevant, but also spoke to Reyes' character, something the State sought to (impermissibly) denigrate throughout the trial.

While the State had already impeached Reyes by introducing a prior felony conviction, it attempted to paint him in a further negative light by informing the jury that not only was Reyes on probation, but also that he was in violation of that probation. In many respects, the State sought to portray Reyes as someone who could not, or would not, comply with a court order. In other words, he was someone who was particularly incapable of complying with a court of justice. It is one thing to show someone has committed a felony. It is another to prove that someone will flaunt the rules of probation while out in society. There is no justification for this evidence other than to paint Reyes as a rule breaker; such an act by the State was clearly unfairly prejudicial to Reyes. We next address errors alleged by Reyes which the State has not conceded.

### B. The district court erred when it determined that Marina was unavailable to testify at trial and allowed her preliminary hearing testimony to be read into the record.

At the preliminary hearing, Marina testified that Reyes had "choked" and "hit" her on the night in question. Subsequently, at trial, the State sought to declare Marina unavailable so it could read her preliminary hearing testimony into the record. The State argued that she was unavailable because it had attempted to serve her with a subpoena several times but had ultimately been unable to secure her attendance at trial. In support of its argument, the State called four witnesses, each of whom had attempted to serve Marina with a subpoena in the days preceding the trial.

5

After hearing this testimony, the district court heard argument from both the State and Reyes' counsel. Reyes' counsel informed the district court that Marina had been subpoenaed and was expected to appear and testify for the defense the following day. Reyes' counsel contended that Marina was not unavailable because she would be appearing the next day, and the State would have an opportunity to call her as a witness and cross-examine her. Nonetheless, the district court found that Marina was unavailable:

> I've reviewed [Idaho Rule of Evidence] 804(a)(5), which defines unavailability is [sic] the witness is absent from the hearing and the proponent of declarant's statements has been unable to procure declarant's attendance by process or other reasonable means.
>
> I have reviewed this. It is apparent that Ms. Reyes has been actively avoiding the service of process. . . .
>
> I furthermore don't think that the State should be required to bear the risk of whether or not Ms. Reyes decides to appear tomorrow. And then certainly they could cross-examine her on her preliminary hearing testimony, which could be used as substantive evidence by the jury if it impeaches her under the rules because it was prior sworn testimony. But that would be requiring the State to bear the brunt of her failure to appear. And I don't think that the State should have to do that should she not appear or have to take that risk should she not appear.
>
> For purposes of 804(a)(5), this Court does find that the declarant is unavailable. The Court further finds that declarant's previous testimony was in this very same case. There was a chance for cross-examination of the declarant or of the witness and a full cross-examination of the witness. And the Court finds that the witness by actively avoiding service of process now is unavailable pursuant to Rule 804(a)(5). Will allow the State to present her preliminary hearing transcript.

Marina's preliminary hearing testimony was then read to the jury.

The next day, Marina appeared to testify as a result of having been served with a defense subpoena. The district court informed counsel that it intended to appoint a public defender to represent her. The district court was concerned that she would perjure herself if she testified for the defense, given her preliminary hearing testimony. After consulting with a public defender, Marina took the stand and invoked her Fifth Amendment right against self-incrimination.

On appeal, Reyes argues that Marina was not unavailable within the meaning of Idaho Rule of Evidence 804(a)(5) because she was expected to testify the next day and was under defense counsel's subpoena to appear. Reyes asserts that there "was nothing stopping the State from calling Ms. Reyes in its case-in-chief when she showed up at court the next day." Reyes further contends that the district court's decision to declare Marina unavailable "surely contributed to the verdict."

Reyes also asserts that the district court improperly allowed Marina to invoke her Fifth Amendment privilege.

In response, the State argues that Idaho Rule of Evidence 804(a)(5) only requires that it make a good faith effort to obtain a witness's attendance at trial. The State contends it made a good faith effort to obtain Marina's presence at trial because it attempted four times to serve her with a subpoena for the correct trial date. Additionally, the State asserts that "the second requirement [of the rule] is only that '*the statement's proponent* has not been able, by process or other reasonable means, to procure . . . the declarant's attendance.'" (Italics in original.) The State also notes Reyes' argument that the district court erred when it permitted Marina to invoke the Fifth Amendment was not objected to below, and therefore cannot be considered for the first time on appeal. (Citing *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019)).

Reyes counters by first pointing out that "[m]erely avoiding service of process . . . does not make a witness unavailable." Reyes contends that because Marina was under a defense subpoena to appear to testify before the State rested, she was not unavailable as defined by Idaho Rule of Evidence 804(a)(5)(A).

"The determination of whether a witness is unavailable, such that preliminary hearing testimony is admissible, is evidentiary in nature. Evidentiary decisions are reviewed under an abuse of discretion standard." *State v. Anderson*, 162 Idaho 610, 617, 402 P.3d 1063, 1070; *see also Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. "In determining unavailability, '[t]he district court's factual finding must be supported by substantial and competent evidence.'" *State v. Lopez-Orozco*, 159 Idaho 375, 381, 360 P.3d 1056, 1062 (2015) (quoting *State v. Richardson*, 156 Idaho 524, 531, 328 P.3d 504, 511 (2014)).

"It is the proponent of the testimony that has the burden to establish unavailability." *Anderson*, 162 Idaho at 616, 402 P.3d at 1069 (citing *State v. Perry*, 144 Idaho 266, 269, 159 P.3d 903, 906 (Ct. App. 2007)). "The lengths to which the prosecution must go to produce a witness is a question of reasonableness." *Id.* at 617, 402 P.3d at 1070 (quoting *Burns v. Clusen*, 798 F.2d 931, 937 (7th Cir. 1986)).

> Idaho Rule of Evidence 804(b)(1) provides an exception to the hearsay rule where a witness is unavailable at trial. It allows for the admission of former testimony where: (1) the witness is unavailable; and (2) "the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

7

*Lopez-Orozco*, 159 Idaho at 381, 360 P.3d at 1062 (quoting I.R.E. 804(b)(1)). "A declarant is considered to be unavailable as a witness if the declarant: . . . is *absent from the trial* or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure . . . the declarant's attendance." I.R.E. 804(a)(5)(A) (italics added).

As a preliminary matter, we will not consider Reyes' argument that his wife was erroneously allowed to invoke the Fifth Amendment because Reyes did not raise this argument in the trial court, despite having the opportunity to do so. *See Gonzalez*, 165 Idaho at 99, 439 P.3d at 1271. Next, we conclude that the district court abused its discretion in declaring Marina unavailable. First, the State had not rested its case at the time it sought to declare Marina unavailable. The State sought to declare Marina unavailable on the second day of trial, to which the district court agreed. Marina's preliminary hearing testimony was then read to the jury. On the third day of trial, Marina appeared pursuant to a defense subpoena. At this point, the State still planned to call an additional witness and had not rested. The district court was aware that Marina had been subpoenaed to appear on the third day of trial. Rather than prematurely declaring Marina unavailable on the second day of trial, the district court should have declined to rule on her availability until it was clear the State would be unable to call her during its case-in-chief. Regardless of who was able to serve Marina with a subpoena, she appeared on the third day of trial, and nothing would have prevented the State from calling her as a witness prior to resting its case. The State did not prove that she was "absent from the trial," particularly in light of the fact she appeared at the trial. I.R.E. 804(a)(5)(A).

Additionally, we are unpersuaded that the State made reasonable efforts to secure Marina's attendance at trial. The State contends that Marina was evading service, yet it had previously been able to serve her for an incorrect trial date. Although the district court acknowledged that there was confusion surrounding two potential trial dates, we conclude that the State could—and should—have served her for both potential trial dates at the same time. Once the alternate date became apparent, Marina could have been released from the unneeded date. Further, the State's failure to serve Marina was cured by the defense's ability to serve her for the proper trial date. A determination of availability cannot rest solely on which party is able to secure service of process. At the end of the day, Marina presented in court before the State rested its case. The district court should have declined to rule on her availability until it determined whether she would comply with the defense's subpoena. The State still had the opportunity to call Marina to the stand after the

8

district court determined she was unavailable. Thus, the district court's determination that Marina was unavailable on the second day of the trial was premature and erroneous.

### C. The prosecutor's comment that Marina was "probably scared" to testify at trial was improper.

During the State's closing argument, the prosecutor argued that Marina may not have testified because of her fear of Reyes: "Certainly, Marina is probably scared." Reyes' counsel objected, to which the district court impliedly overruled the objection by merely responding, "It's argument."

On appeal, Reyes alleges that the prosecutor committed misconduct when she "invited the jury to infer facts which she knew to be false and put facts not in evidence before the jury." Instead, Reyes contends that the actual reason Marina did not testify was because the district court "*sua sponte* appointed [her] a lawyer to warn her not to perjure herself," and she took that advice and invoked her Fifth Amendment right.

In response, the State asserts that the prosecutor did not engage in misconduct during her closing argument because the statement at issue was based on the evidence. Further, the State contends, attorneys are afforded "considerable latitude" in closing arguments. (Quoting *State v. Alwin*, 164 Idaho 160, 169, 426, P.3d 1260, 1269 (2018).) Specifically, the State argues that "the prosecutor's comment that Marina was 'probably scared' to testify about the abuse in 'a room full of strangers' was based on the evidence and reasonable inferences that could be drawn from the evidence." The State urges that, when read in context, the comment that the victim was scared "referred only to [her] fear of telling strangers about her abuse and not to [her] fear of Reyes."

This Court has examined claims of prosecutorial misconduct as follows:

> [W]hen an objection to alleged prosecutorial misconduct is raised at trial, we use a two-part test to determine whether the misconduct requires reversal. *See, e.g., State v. Reynolds*, 120 Idaho 445, 448, 816 P.2d 1002, 1005 (Ct. App. 1991). First, we ask whether the prosecutor's challenged action was improper. *State v. Romero–Garcia*, 139 Idaho 199, 202, 75 P.3d 1209, 1212 (Ct. App. 2003). If it was not, then there was no prosecutorial misconduct. *Id.* If the conduct was improper, we then consider whether the misconduct "prejudiced the defendant's right to a fair trial or whether it was harmless." *Id.* The defendant carries the burden of proving prejudice. *State v. Wright*, 97 Idaho 229, 232, 542 P.2d 63, 66 (1975). When a defendant is unable to demonstrate prejudice, the misconduct will be regarded as harmless error. *State v. Garcia*, 100 Idaho 108, 111, 594 P.2d 146, 149 (1979).

*State v. Severson*, 147 Idaho 694, 716, 215 P.3d 414, 436 (2009).

We acknowledge that "'[t]here is considerable latitude in closing argument, and both sides are entitled to discuss fully, from their respective standpoints, the evidence and the inferences that should be drawn from it.'" *State v. Miller*, 165 Idaho 115, 122, 443 P.3d 129, 136 (2019), *reh'g denied* (June 12, 2019) (quoting *State v. Alwin*, 164 Idaho 160, 169, 426 P.3d 1260, 1269 (2018)). "Moreover, 'in reviewing allegations of prosecutorial misconduct the Court must keep in mind the realities of trial. A fair trial is not necessarily a perfect trial.'" *Id.* at 123, 443 P.3d at 137 (quoting *State v. Lankford*, 162 Idaho 477, 494, 399 P.3d 804, 821 (2017)).

We have previously noted that "[p]rosecutorial misconduct occurs when the State 'attempts to secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted at trial, including reasonable inferences that may be drawn from that evidence.'" *Miller*, 165 Idaho at 122, 443 P.3d at 136 (quoting *State v. Bernal*, 164 Idaho 190, 196, 427 P.3d 1, 7 (2018)). "[T]he prosecutor has a duty to avoid misrepresentation of the facts and unnecessarily inflammatory tactics." *Id.* "Inflammatory comments are comments which are 'calculated to inflame the minds of jurors and arouse passion or prejudice against the defendant, or [are] so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence.'" *Id.* at 123, 443 P.3d at 137 (quoting *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003)).

The prosecutor engaged in prosecutorial misconduct when she commented that Marina was "probably scared" to testify due to her alleged fear of Reyes. The prosecutor's closing argument in this case was an attempt to portray Marina as fearful of Reyes simply because she did not testify at trial. This was not the first comment by the State made in the presence of the jury concerning the purported reason that Marina did not testify at trial. The State made persistent efforts throughout the course of the trial to present Marina as fearful of Reyes, despite the fact that evidence to that effect was not elicited at trial. No facts in evidence suggested that she refused to testify because she feared Reyes. The prosecutor's statement that Marina was "probably scared" of Reyes was inflammatory in that the jury was "influenced to determine guilt [based] on factors outside the evidence." *Miller*, 165 Idaho at 123, 443 P.3d at 137 (citations omitted). Therefore, this statement was improper and constituted prosecutorial misconduct.

### D. The district court did not abuse its discretion in allowing the State to ask why Marina's niece asked officers to lie about who called 911.

Marina's niece testified at trial about what she observed on the night of the incident. During the State's direct examination of her, the following exchange took place:

Q: [Okay], when you spoke with law enforcement on July 16th of 2017, did you ask them to tell the defendant that the neighbors had called the police?
A: Yes.
Q: Why did you ask them to tell [Reyes] that the neighbors called the police?
[Defense counsel]: Judge, I'm going to object. It's irrelevant.
[The State]: Your Honor, I think it goes to motive or bias, which I assume [the] defense is going to attack.
[Defense counsel]: Then it goes to speculation then if she doesn't know I'm going to attack it or not.
THE COURT: Overruled. I will allow it.
Q. [By the prosecutor]: You can answer that question[.]
A: Can you repeat it, please.
Q: Why did you asked the police to tell the defendant that the neighbors had called instead of you?
A: Because then my aunt won't talk to me anymore.
Q: Is Marina talking to you at this point in time?
A: No.

On appeal, Reyes argues that this evidence was irrelevant to proving whether Reyes committed the charged conduct. Further, Reyes argues that evidence is only relevant for the purpose of rehabilitating a witness "after the witness's credibility has been attacked." (Citing *State v. Ellington*, 151 Idaho 53, 62, 253 P.3d 727, 736 (2011)). Thus, Reyes argues, this evidence was not "properly admitted to rebut a supposed anticipated attack on Marina's credibility as argued by the State."

In response, the State notes that Reyes' counsel only objected to the prosecutor's second question as to *why* she requested that law enforcement officers lie about who dialed 911 and failed to object to the first question of *whether* she had made the request at all. The State next asserts that it was permitted to "draw the sting" of the victim's niece's testimony by "adopting a strategy of full disclosure" on direct-examination. "The prosecutor first elicited—without objection—the damaging testimony that [the victim's niece] had asked the police to lie about circumstances related to the alleged abuse. The prosecutor then drew the sting of that testimony by having [her] explain her request to the jury."

The State distinguishes the facts of *State v. Ellington*, relied upon by Reyes, noting that it "did not try to support [her] credibility *before* an attack; it first attacked [her] credibility by eliciting that she asked police to lie about circumstances surrounding the abuse, and then, only after that attack, the [S]tate drew the sting using [her] explanation that she made the request to protect her relationship with [the victim.]"

11

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." I.R.E. 401. Relevant evidence is generally admissible. I.R.E. 402.

> Even relevant evidence may be excluded by the district court if "its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" I.R.E. 403. "In other words, evidence should be excluded if it invites inordinate appeal to lines of reasoning outside of the evidence or emotions which are irrelevant to the decision making process." *State v. Rhoades*, 119 Idaho 594, 604, 809 P.2d 455, 465 (1991).

*Garcia*, 166 Idaho at 670, 462 P.3d at 1134.

The district court did not abuse its discretion in overruling Reyes' objection to the State's question regarding why Marina's niece asked officers to lie. The State's inquiry into Marina's niece's reason for asking officers to lie about who called the authorities was relevant pursuant to Idaho Rule of Evidence 401. There was no danger of unfair prejudice to Reyes, nor was it impermissible for the State to attack its own witness's credibility before allowing the witness to explain her reason for lying. *See Hayes*, 166 Idaho at 656, 462 P.3d at 1120 ("Idaho Rule of Evidence 607 states that '[a]ny party, including the party that called the witness, may attack the witness's credibility.'").

**E. In the aggregate, the errors at Reyes' trial rendered the trial unfair.**

"Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. However, a necessary predicate to the application of the doctrine is a finding of more than one error." *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012) (quoting *State v. Perry*, 150 Idaho 209, 230, 245 P.3d 961, 982 (2010)). "The presence of errors, however, does not by itself require the reversal of a conviction, since under due process a defendant is entitled to a fair trial, not an error-free trial." *State v. Johnson*, 163 Idaho 412, 428, 414 P.3d 234, 250 (2018) (quoting *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998)).

In this case the district court committed four errors, two of which have been conceded by the State: (1) permitting the prosecutor to list prior charges against Reyes to the jury, (2) permitting the prosecutor to elicit testimony that Reyes was both on felony probation and in violation of the terms of that probation on the night of the incident, (3) determining that Marina was unavailable to testify at trial under Idaho Rule of Evidence 804(a)(5)(A), and (4) allowing the prosecutor to argue that the reason Marina did not testify was because she was "scared" of Reyes.

12

"Viewing these errors in relation to the totality of the evidence presented at trial," it is apparent that the State continually attempted, by improper and inflammatory means, to paint Reyes in a negative light to the jury. *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998). "As public officers, prosecutors have a duty to ensure that defendants receive fair trials. In carrying out this duty, a prosecutor must 'guard against anything that would prejudice the minds of the jurors, and tend to hinder them from considering only the evidence introduced.'" *State v. Abdullah*, 158 Idaho 386, 440, 348 P.3d 1, 55 (2015) (quoting *State v. Severson*, 147 Idaho 694, 715, 215 P.3d 414, 435 (2009) (internal citations omitted)). "[Prosecutors] should not exert their skill and ingenuity to see how far they can trespass upon the verge of error, because generally in so doing they transgress upon the rights of the accused." *State v. Lankford*, 162 Idaho 477, 494, 399 P.3d 804, 821 (2017) (quoting *State v. Christiansen*, 144 Idaho 463, 469, 163 P.3d 1175, 1181 (2007)).

In reviewing the trial record, a pattern of unfair tactics by the State's team of prosecutors is evident. First, in examining Marina's niece, one of the prosecutors asked, "And I hate to ask you this question, Laura, but are you scared to be testifying here today?" Reyes' counsel objected to the question, which was sustained by the district court.

Next, during Corporal Sheri Cameron's testimony regarding domestic violence victims generally, the other prosecutor asked:

Q: They [victims of domestic violence] can go to the prosecutor and say "I want the charges dropped?"

A: Yes.

Q: And they can go to the defense attorney and say, "Hey, I want to testify for the defendant?"

A: Oh, yeah. Yes.

Q: They do that too, don't they?

A: They do.

Q: They do. In fact, a lot of times their first call is not to the prosecutor. It's to the defense attorney, right?

[DEFENSE COUNSEL]: Judge, you know what. Judge.

THE COURT: Sustained. . . .

Further, during Reyes' testimony, one of the prosecutors attempted to impeach Reyes with (1) a prior felony conviction, (2) Reyes' usual behavior of locking his bedroom door during fights with Marina, and (3) Reyes' felony probation status:

Q: On July 16th of 2017 you were on felony probation; correct?

13

A: Yes.

Q: So you were not supposed to be in a bar, were you?

Q [DEFENSE COUNSEL]: Judge, I'm going to object to relevance.

THE COURT: Overruled.

THE WITNESS: Correct.

Q: And you were not supposed to be drinking either, were you?

A: Correct.

. . .

Q: This is a report from the Caldwell Police Department dated November 8th of 2015. It alleges you committed the criminal offense of attempted strangulation, domestic battery, malicious injury to property, and witness intimidation.

[DEFENSE COUNSEL]: Judge, I'm going to object.

THE COURT: Overruled.

Q: You remember this incident, do you not, Mr. Reyes?

A: Yes.

Q: And you remember that the victim in this particular case three years ago was Marina Reyes; correct?

A: Yes.

. . .

THE COURT: I've already let you go into instances where he didn't go in the bedroom and lock the [door]. You've done that. But I'm not going to retry the entire incident about attempted strangulation and that. I'm not going to allow that. . . .

Q: [the prosecutor]: So you spoke to the police that night November 28th, 2015; correct?

A: Yes.

Q: And you told the police that Marina attacked you?

A: If that's what that says there.

Q: No. I'm asking you. That's what you told the police; correct?

A: I honestly don't remember.

Q: And in fact, Marina attacked you—

[DEFENSE COUNSEL]: Judge, we're getting testimony.

THE COURT: He's answered that, [Prosecutor]. Can we move on.

Q: Okay. And you told the police you only tried to push Marina off you while she was attacking you; correct?

14

THE COURT: [Prosecutor], I don't want to go into the specifics of that case. I'm not going to allow that question.

[THE PROSECUTOR]: Okay.

Q: Is it fair to say, Mr. Reyes, that what happened in 2015 and what happened in July of 2017 are very similar?

[DEFENSE COUNSEL]: Judge, I'm going to object.

THE COURT: Sustained. The jury is to disregard that question.

Q: And in fact, you have the same story today that you had then?

[DEFENSE COUNSEL]: Judge, I'm going to object.

THE COURT: Sustained. [Prosecutor], we're not going into the facts of that. The jury is to disregard that question.

Lastly, during his re-cross-examination of Reyes, one of the prosecutors engaged in the following line of questioning:

Q: Was Marina cooperative with the prosecutor's office—

[DEFENSE COUNSEL]: Judge, I'm going to object. That's outside the scope.

THE COURT: Sustained. Sustained.

[PROSECUTOR]: Well, there's a reason the charge was dropped.

[DEFENSE COUNSEL]: Judge.

THE COURT: That's my decision, [Prosecutor]. Sustained.

[DEFENSE COUNSEL]: Judge, I want that question stricken.

THE COURT: Okay. The jury—

[PROSECUTOR]: No. Can we approach?

THE COURT: The Court's going to strike that question. The jury's not to consider it.

As demonstrated by these exchanges at trial, the prosecutors did not uphold their duty to ensure that Reyes received a fair trial, and such conduct will not be condoned by this Court. These errors, when taken together, were of "such magnitude" that Reyes was denied a fair trial. *Id.* Because we find that Reyes is entitled to a new trial under the cumulative error doctrine, we need not determine whether any error individually denied Reyes a fair trial.

## IV.   CONCLUSION

For the reasons discussed, Reyes' convictions are vacated, and the case is remanded for a new trial.

Chief Justice BEVAN, Justices, BRODY, MOELLER and BURDICK CONCUR.